STATE OF CONNECTICUT *v.* WILLIE SHANNON
(AC 18741)

Lavery, C. J., and Schaller and Cretella, Js.

Argued October 26, 2000—officially released January 30, 2001

*Sarah F. Summons,* special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario,* assistant state's attorney, with whom, on the brief, were *John M. Bailey,* chief state's attorney, *Richard L. Palombo, Jr.,* supervisory assistant state's attorney, and *Jeffrey Lee,* deputy assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Willie Shannon, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of correction to serve the suspended portion of sentences imposed on September 13, 1991, and November 6, 1996. The defendant claims that the court improperly found that (1) he violated the terms of his probation on the basis of evidence that was neither reliable nor probative and (2) he could no longer benefit from probation in violation of his due process rights.[1] We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On September 13, 1991, the defen-

---

[1] The defendant also claims that the state violated his due process and statutory rights by failing to process his alleged probation violation within six months and by failing to bring a hearing on the matter within twelve months from the alleged violation. The defendant did not preserve this claim and seeks review under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We conclude that the defendant failed to develop this claim sufficiently in the trial court for this court to review the alleged delay for constitutional infirmity under the standard for speedy trials set forth in *Barker* v. *Wingo,* 407 U.S. 514, 530, 92 S. Ct. 2182, 33 L. Ed. 2d 101 (1972), which requires the examination of four factors, which are the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (Internal quotation marks omitted.) *State* v. *Ortiz,* 252 Conn. 533, 568, 747 A.2d 487 (2000).

dant was convicted of possession of narcotics and criminal impersonation, and sentenced to twelve years imprisonment, execution suspended after seven years, with three years probation. The term of probation commenced on July 11, 1996. On November 6, 1996, the defendant was convicted of possession of narcotics and sentenced to three years, execution suspended, with three years probation commencing on the same day. The terms of the defendant's probation expressly provided: "Do not violate any criminal laws of the United States, this state or any other state." On August 12, 1997, the defendant was arrested for a narcotics offense that occurred on February 25, 1997. On June 4, 1998, the court held a violation of probation hearing.

At the probation revocation hearing, the state called to the witness stand a number of witnesses. The first witness was Michele Emery, the defendant's probation officer, who had issued warrants for probation violation after the August, 1997 arrest. She testified on cross-examination that she had had no problems with the defendant prior to his arrest. The state then called to the witness stand a series of law enforcement witnesses to testify to the events that transpired on February 25, 1997. Edwin Kohl, a detective with the New Haven police department working undercover on a counter-narcotics operation, testified that he purchased crack cocaine from an individual whom he later identified as the defendant. A second officer from the New Haven police department, Richard Pelletier, who had video-taped the operation, identified the defendant as the individual whom he videotaped selling cocaine to Kohl. Pelletier also testified to firsthand observations of a third police officer purchasing cocaine from the defendant. Joel Milzoff, a toxicology specialist with the department of public health, testified that he had positively identified the substance delivered to him by the police department as crack cocaine. Finally, another

witness to the transaction, Jeffrey Lewis, reviewed the videotape footage and identified himself as one party recorded on the videotape, but could not identify the defendant as the individual selling cocaine on the videotape. Lewis further testified that he had known the defendant for a number of years and never knew the defendant to wear a hood like the one worn by the individual identified by the other witnesses as the defendant on the videotape footage.

On June 8, 1998, the court concluded that the defendant had violated the terms of his probation and sentenced him to serve the remaining period of his five year sentence to run concurrently with the three year term for the second conviction.[2] The defendant appeals from the judgment finding him in violation of the terms of his probation.

"[A] probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . General Statutes § 53a-32 (a)." (Citation omitted.) *State* v. *Davis*, 229 Conn. 285, 289–90, 641 A.2d 370 (1994). In this first stage, "[t]he state must establish a violation of probation by a fair preponderance of the evidence." *State* v. *Reilly*, 60 Conn. App. 716, 725, 760 A.2d 1001 (2000).

When the court finds a violation of the terms of probation, it proceeds to the second stage to determine whether the defendant's probation should be revoked. "When reviewing the second component of a probation revocation hearing, an appellate court must determine whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incar-

---

[2] The court initially imposed consecutive terms of imprisonment, but modified the sentence to concurrent terms following a motion to correct the sentence.

ceration. . . . In making this second determination, [whether the defendant's probationary status should be revoked] the trial court is vested with broad discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling . . . [and] [r]eversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citations omitted; internal quotation marks omitted.) *State* v. *Bostwick*, 52 Conn. App. 557, 563–64, 728 A.2d 10, appeal dismissed, 251 Conn. 117, 740 A.2d 381 (1999).

The state adduced sufficient evidence to establish by a preponderance of the evidence the defendant's involvement in the sale of narcotics. This offense sufficed to establish a violation of the terms of the defendant's probation, specifically, that he "not violate any criminal laws of . . . this state . . . ." Once the court found that the defendant had violated the terms of his probation, the question of whether the defendant's probationary status should be revoked was a matter within the court's broad discretionary powers. Reviewing the record before us, we conclude that the court did not abuse its discretion in revoking the defendant's probation.

The judgment is affirmed.