STATE OF CONNECTICUT *v.* GUADALUPE
LEON-ZAZUETA
(AC 23251)

Lavery, C. J., and Dranginis and McLachlan, Js.

Argued October 17—officially released December 30, 2003

*Peter A. Kelly,* special public defender, for the appellant (defendant).

*Toni M. Smith-Rosario,* assistant state's attorney, with whom, on the brief, were *Michael Dearington,* state's attorney, and *Eugene R. Calistro, Jr.,* assistant state's attorney, for the appellee (state).

*Opinion*

LAVERY, C. J. The defendant, Guadalupe Leon-Zazueta, appeals from the judgment of conviction, rendered after a jury trial, of possession of narcotics with intent to sell by a person who is not drug-dependent in violation General Statutes § 21a-278 (b) and possession of narcotics in violation of General Statutes § 21a-279 (a). On appeal, the sole question is whether there was sufficient evidence for the jury to conclude that the defendant had constructive possession of the narcotics to support his conviction. We answer the question in the affirmative and, therefore, affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant lived in the third floor apartment of a three-family house on 133 Springdale Avenue in Meriden. He shared his apartment with his friend, Omar Ramos, Ramos' girlfriend, Norma Rodriguez, and Rodriguez's two young children. On August 1, 2001, before leaving for work, the defendant asked Rodriguez to sign for several packages he was expecting to arrive that day so that they could be received in his absence. The defendant did not inform Rodriguez of the contents of the packages.

On July 30, 2001, two days prior to the defendant's conversation with Rodriguez, two detectives with the parcel interdiction team of the narcotics division of the San Bernardino County sheriff's department intercepted two suspicious packages while conducting a random parcel inspection at a Mail Boxes Etc. in Rancho Cucamonga, California. The packages were addressed to the defendant at 133 Springdale Avenue, Meriden, under the names "Guadalupe Leon" and "Lupita Leon." Finding a reasonable and articulable suspicion that the packages contained narcotics, the detectives inspected the packages with a drug sniffing canine that gave a positive alert on the two packages. The detectives obtained a search warrant and opened the packages. The packages contained a total of four pounds of a substance that tested positive for cocaine.

As part of a controlled delivery coordinated with state and federal authorities in Connecticut, the San Bernardino sheriff's department repackaged the cocaine. On August 1, 2001, an officer disguised as a delivery person took the two packages to the defendant's third floor apartment. Rodriguez answered the door and signed "G. Leon" for the packages, as the packages were addressed to the defendant. Rodriguez placed the packages unopened in an unlocked closet in the living room of the defendant's apartment. Within minutes of the delivery, the police entered the apartment. Finding only Ramos, Rodriguez and Rodriguez's two children, the police advised Ramos and Rodriguez of their *Miranda*[1] rights and placed them under arrest.

Police searched the defendant's apartment pursuant to a warrant and discovered, in addition to the two unopened packages that had been delivered by the officer, two cardboard boxes on the floor of the defendant's bedroom closet. One box had the remnant of a label

---

[1] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

showing most of the defendant's last name while the other box had the same Rancho Cucamonga zip code on it as was listed for the sender of the two packages involved in the controlled delivery. The search of the defendant's bedroom also uncovered a large knife with a blade longer than twelve inches, an open box of plastic sandwich bags, an open box of baking soda, a large pan and a professional mini digital scale, among other narcotics related items. On the same day as the controlled delivery, the defendant was informed of his rights and interviewed at his place of employment. He was informed that there would be a warrant for his arrest sought. He was arrested two days later. After his conviction, this appeal followed. Additional facts will be set forth as necessary.

The sole issue that the defendant raises on appeal is whether there was sufficient evidence produced at trial to show that he had the requisite possession of the cocaine that was mailed to his residence for the jury to convict him of possession of narcotics with intent to sell by a person who is not drug-dependent in violation § 21a-278 (b) and possession of narcotics in violation of § 21a-279 (a).[2] Specifically, the defendant argues that there was insufficient evidence to prove that he had constructive possession of the cocaine mailed to his residence. We are not persuaded.

At the outset, we set forth our standard of review. "In reviewing [a] sufficiency [of evidence] claim, we apply a two part test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the

---

[2] The defendant was found not guilty of a third charge, possession of drug paraphernalia in a drug factory situation in violation of General Statutes § 21a-277 (c).

cumulative force of the evidence established guilt beyond a reasonable doubt. . . . In this process of review, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . .

"While . . . every element [must be] proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt. . . . Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Citations omitted; internal quotation marks omitted.) *State* v. *Harris*, 60 Conn. App. 436, 444–45, 759 A.2d 1040, cert. denied, 255 Conn. 907, 762 A.2d 911 (2000).

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where, as here, the cocaine was not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) *State* v. *Jimenez*, 73 Conn. App. 664, 667, 808 A.2d 1190, cert. denied, 262 Conn. 929, 814 A.2d 381 (2002). "To mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses and to assure that proof exists beyond a reasonable doubt, it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband." *State* v. *Brunori*, 22 Conn. App. 431, 436–37, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990).

Although there was no physical evidence placing the defendant in his apartment at the time the cocaine was delivered and seized, the state presented sufficient evidence to support the inference that he knew of the cocaine's presence, and of the related processing and packaging materials in his apartment and exercised control over them.

The evidence demonstrated that the two packages containing cocaine arrived at the defendant's residence

at the time he expected them. Rodriguez, who lived in the defendant's apartment, testified that the defendant had asked her to sign for two packages he expected to be delivered to him that day. Rodriguez accepted both packages on his behalf as requested. She placed the defendant's packages, unopened, in an unlocked closet where the defendant could retrieve them on his return from work. Both packages were addressed to the defendant's residence at 133 Springdale Avenue in Meriden. One package was addressed to the defendant by name, "Guadalupe Leon." The second package was addressed to "Lupita Leon." "Lupita" is derived from the defendant's first name, and he admitted that "Lupita" was his daughter's nickname.

There also was other evidence that buttressed the inference of the defendant's constructive possession of the cocaine. The evidence showed that the defendant had items associated with drug processing and packaging in his locked bedroom, including a professional mini digital scale, an open container of baking soda, a pan and an open box of sandwich bags. The evidence also revealed the presence of two cardboard boxes with the remnants of address labels in the defendant's bedroom closet, one showing most of the defendant's name, "adalupe," and the other showing the same Rancho Cucamonga zip code as was listed for the sender of the two boxes involved in the controlled delivery. Additional evidence from a Federal Bureau of Investigation pen register log indicated that the defendant's telephone was used to call or to receive calls from the telephone of a large scale drug dealer in California on twelve occasions during March, 2001.

The jury reasonably could have concluded that the defendant was in constructive possession of the cocaine on the basis of the reasonable inferences drawn from the evidence presented. "It is well settled that in reviewing a defendant's challenge to a verdict based

on insufficient evidence, we defer to the jury. . . . We do not sit as [an additional] juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Citation omitted; internal quotation marks omitted.) *State* v. *Young*, 56 Conn. App. 831, 835, 746 A.2d 795, cert. denied, 253 Conn. 904, 753 A.2d 939 (2000). "The [jury] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Gonzales*, 74 Conn. App. 580, 592, 814 A.2d 384, cert. denied, 263 Conn. 915, 821 A.2d 771 (2003).

Construing the evidence and the reasonable inferences drawn therefrom in the light most favorable to sustaining the verdict, there was sufficient evidence to support the jury's verdict. We conclude, therefore, that the evidence was sufficient to support a conclusion that the defendant constructively possessed the cocaine mailed to and subsequently found in his apartment.

The judgment is affirmed.

In this opinion the other judges concurred.