STATE OF CONNECTICUT *v.* HECTOR FERMAINT
(AC 25192)

Flynn, Bishop and Dupont, Js.

Argued May 24—officially released September 27, 2005

*Erika L. Amarante*, special public defender, with whom was *Aaron S. Bayer*, special public defender, for the appellant (defendant).

*Julia K. Conlin,* deputy assistant state's attorney, with whom, on the brief, were *Scott J. Murphy,* state's attorney, and *Brian Preleski,* senior assistant state's attorney, for the appellee (state).

*Opinion*

DUPONT, J. The defendant, Hector Fermaint, appeals from the judgment of the trial court finding him in violation of the conditions of his probation, revoking his probation and committing him to the custody of the commissioner of correction for eight years, execution suspended after five years, and five years of probation. The defendant raises two issues on appeal. The defendant claims that (1) there was insufficient evidence for the court to find, by a fair preponderance of the evidence, that he was in possession of narcotics[1] and (2) the delay in holding his probation revocation hearing violated General Statutes § 53a-32 (a) and his constitutional rights to due process and a speedy trial. Because we conclude that there was insufficient evidence for the trial court to find that the defendant was in possession of narcotics, we reverse the judgment of the trial court and remand the case with direction to render judgment in favor of the defendant.[2]

On the basis of the evidence presented by the state at the probation revocation hearing, the trial court found the following facts. The defendant began his probation on February 23, 2001, and he signed the conditions of probation on March 1, 2001, certifying that he was advised of the conditions and that he understood

[1] During the probationary period of the defendant's original sentence of ten years imprisonment, execution suspended after eighteen months, with ten years probation, the defendant was arrested on charges of possession of narcotics and possession of marijuana, in violation of General Statutes §§ 21a-279 (a) and 21a-279 (c), respectively. That arrest caused a warrant to be issued, charging the defendant with a violation of a condition of probation.

[2] In view of our disposition of the first issue, we need not resolve the second issue.

them. One of the conditions was that he not commit any new crimes. On June 25, 2001, the defendant was arrested on a charge of violation of probation because he had been arrested and charged with possession of narcotics on May 1, 2001.

On May 1, 2001, Officer Jerry Chrostowski of the New Britain police department received a telephone call from a confidential informant with whom Chrostowski had worked for five years. The informant told Chrostowski that Kara Laliberte was in the Pinnacle Heights housing project and was in possession of cocaine. The informant also told Chrostowski that Laliberte was in her Honda Accord, accompanied by two males. The informant identified one of the males as "Hector," Laliberte's boyfriend. After locating Laliberte and her Honda and surveilling the automobile for five to fifteen minutes, Chrostowski observed the car leave the area. Chrostowski called over the police radio for a marked police vehicle to stop the Honda.

Officer Raymond Grzegorzek, who was in a marked cruiser, stopped the Honda. Immediately in back of the marked cruiser was Chrostowski's car. Grzegorzek informed Chrostowski that he had observed the occupants of the car engaging in furtive movements. As Chrostowski approached the vehicle, he observed a lot of furtive movements between the backseat passenger and Laliberte. When the headlights of the cruiser were on the Honda, Chrostowski saw the defendant make a bending movement from the backseat, where he was seated, toward Laliberte, who was seated in the front passenger seat. As Officer Christopher Brody, who was working with Chrostowski, approached the Honda, he observed Laliberte putting something down her pants. Chrostowski approached the defendant and noticed,

with the aid of his flashlight, several crumbs[3] of a rock like substance on the seat next to the defendant. Believing the crumbs to be crack cocaine, Chrostowski asked the other officers to escort the driver and passengers out of the car. Chrostowski collected the crumbs found on the seat and field tested them. They tested positive for the presence of cocaine. The Honda was searched, and a small amount of green leafy substance was found in the front carpet area of the car. That substance tested positive for marijuana. A plastic bag with a large rock like substance was found in Laliberte's pants. It tested positive for crack cocaine. Laliberte also had $120 in cash concealed in her bra. An address book was recovered from the defendant, containing names of people that were familiar to the arresting officers. The book also contained other names and personal information of the defendant. No drugs were found on the person of the defendant. He was carrying $2 at the time. On the basis of its findings, the court found that the defendant "possessed narcotics . . . and thereby violated a condition of his probation."[4]

The defendant claims that the court's finding of a violation of probation was not sufficiently supported by a fair preponderance of the evidence. One of the general conditions of the defendant's probation was that he not violate any criminal law of the United States, this state or any other state or territory. The probation violation was premised on his arrest on a charge of

---

[3] At the probation revocation hearing, Chrostowski testified that the crumbs were approximately one-tenth of one gram. Chrostowski further testified that it was possible that the defendant could have been sitting in the backseat without noticing the crumbs.

[4] The defendant was arrested on charges of possession of narcotics and possession of marijuana. See footnote 1. The court, however, did not find that he possessed marijuana. The court based its finding that the defendant violated his probation on the allegation that the defendant was found in possession of narcotics. The defendant was never prosecuted by the state for either crime.

possession of narcotics in violation of General Statutes § 21a-279 (a).[5] The defendant argues that there was insufficient evidence to find that he possessed the seized contraband. We agree.

"A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made." (Internal quotation marks omitted.) *State* v. *Davis*, 84 Conn. App. 505, 509, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004). "The state must establish a violation of probation by a fair preponderance of the evidence. That is to say, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. (Citation omitted; internal quotation marks omitted.) *State* v. *Reilly*, 60 Conn. App. 716, 725, 760 A.2d 1001 (2000). "If a violation is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served. . . . Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." (Internal quotation marks omitted.) *State* v. *Davis*, supra, 509. The court's factual finding that a condition of probation was violated is the determination from which the defendant in this case appeals.

"In making its factual determination, the trial court is entitled to draw reasonable and logical inferences

---

[5] General Statutes § 21a-279, entitled "Penalty for illegal possession. Alternative sentences," provides in relevant part: "(a) Any person who possesses or has under his control any quantity of any narcotic substance, except as authorized in this chapter, for a first offense, may be imprisoned not more than seven years or be fined not more than fifty thousand dollars, or be both fined and imprisoned; and for a second offense, may be imprisoned not more than fifteen years or be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for any subsequent offense, may be imprisoned not more than twenty-five years or be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling.

"[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . To mitigate the possibility that innocent persons might be prosecuted for . . . possessory offenses . . . it is essential that the state's evidence include more than just a temporal and spatial nexus between the defendant and the contraband. . . . While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that pres-

ence and the other circumstances linking [the defendant] to the crime." (Citations omitted; internal quotation marks omitted.) Id., 509–11.

Although *Davis* establishes the parameters of constructive possession, the facts in this case are different from the facts in *Davis*.[6] "Where the defendant is not in exclusive possession of the premises where the narcotics are found, it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference." (Internal quotation marks omitted.) Id., 510. The crumbs of crack cocaine were not found on the defendant's person. Furthermore, he was not in control of the location where the crumbs were found. The record is devoid of any incriminating statements made by the defendant. In order to infer that the defendant in this case knew of the presence of the narcotics and had control of them, therefore, there must be circumstances tending to buttress such an inference.

The court relied on the following facts to support its inference: (1) a confidential informant notified New Britain police that Laliberte was in possession of crack cocaine and that she was accompanied by the defendant; (2) after Laliberte's Honda was stopped by police, there were furtive movements inside the vehicle—the

---

[6] In *Davis*, the police, on the basis of a tip, set up two controlled purchases at the residence of the defendant. The informant purchased drugs from an African-American male named Doug at the defendant's residence. The defendant was the only African-American male named Doug living at the residence. The defendant's car was parked in the driveway at the time of the controlled purchases. While the police were executing a search warrant at the defendant's residence, the defendant arrived at the premises as a passenger in his vehicle. When beckoned by an officer, the car was driven away. The facts in the present case are clearly distinguishable. Significantly, there were no controlled purchases from the defendant or observed sales by the defendant, and the narcotics were not recovered in an area over which the defendant exercised any control.

defendant turned to look back at the police and he leaned toward Laliberte; (3) crumbs of crack cocaine were found on the seat next to the defendant; (4) Laliberte was observed stuffing something down her pants that was later identified as crack cocaine; and (5) the defendant was carrying an address book containing names, addresses and telephone numbers of people familiar to the arresting officers.

The information provided by the confidential informant does not permit inferences that the defendant either knew of the substance's presence or exercised dominion and control over it. It also does not buttress such inferences. The informant did not tell Chrostowski that the defendant purchased, sold or used cocaine. The informant did not tell Chrostowski that the defendant possessed cocaine. To the contrary, the informant told Chrostowski that Laliberte possessed cocaine and that the defendant was in her presence. The subsequent searches of Laliberte and the defendant revealed that Laliberte had cocaine in her direct physical possession and that the defendant did not, corroborating the information provided to Chrostowski. Laliberte had $120; the defendant had $2. The information received by Chrostowski from the informant says nothing of the defendant's knowledge or control of narcotics.

The fact that crumbs of cocaine were found on the seat next to the defendant is no more than a temporal and spatial nexus between the defendant and the contraband, which is insufficient proof of possession. "While mere presence is not enough to support an inference of dominion or control, where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime." (Internal quotation marks omitted.) Id., 510–11. Therefore, we must

look to the other evidence tying the defendant to the dominion and control of the cocaine before we can determine if the trial court was entitled to draw any inferences from the defendant's presence.

The court relied on the furtive movements[7] inside the vehicle as other evidence tying the defendant to dominion and control. Our case law indicates that mere furtive movements are not enough to establish an inference of possession. In *State* v. *Brunori*, 22 Conn. App. 431, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990),[8] this court held that a defendant's bending over and attempting to walk away while in a public, high crime area were not *"probative* in supporting an inference of possession." (Emphasis added.) Id., 439. The court, again, articulated that principle in *In re Benjamin C.*, 22 Conn. App. 458, 577 A.2d 1117 (1990): "Bending over as if to tie one's shoe is one of those innocent gestures that can be mistaken for a guilty movement. The motivation for such an action may run

---

[7] Although the officers testified that they had observed furtive movements inside the vehicle, there was no mention of the furtive movements in the police report that Chrostowski had prepared almost two years and eight months earlier. Chrostowski testified that he prepared reports with as much detail as possible to aid his ability to give accurate testimony if called to testify years after an arrest, however, he failed to provide an explanation why information about the furtive movements was omitted from the police report.

[8] In *Brunori*, police officers observed the defendant walk around the corner of a building after he saw the police approaching, bend over with his arm outstretched, come back up and move back a few feet. *State* v. *Brunori*, supra, 22 Conn. App. 433. Cocaine and a hypodermic needle were later recovered in the proximate area that the officers had observed the defendant bend and reach. Id. The court explained: "Surely, the innocuous act of bending over on a public sidewalk cannot be given any weight. Possession cannot be established by evidence of a movement that may have been performed for a multitude of reasons. The possibility that the defendant here may have discarded narcotics is not enough. In addition, the fact that the defendant started walking as the patrol car was arriving was no more suspicious than if he had instead elected to 'freeze.' No matter what the defendant did at this point, the state, no doubt, could have argued that some inculpatory inference could be drawn from his movements." Id., 439.

the whole spectrum from the most legitimate to the most heinous." Id., 462.

It logically follows that the nondescript furtive movements, namely, the leaning forward by the defendant toward Laliberte and the defendant's turning to look back at the police cruiser when the lights were turned on, do not create or support an inference of possession. The defendant's turning to look back at the police cruiser when the lights were initiated was an innocuous act. Innocent drivers and their passengers turn to look in the direction of lights and sirens everyday. If they did not, it would be hard to imagine how drivers would be effectively alerted that police were conducting a traffic stop or that they needed to allow an ambulance, police vehicle or fire engine to pass. The defendant's leaning forward to the area that the police ultimately uncovered the narcotics, namely, the person of Laliberte, is similar to the *Brunori* and *In re Benjamin C.* defendants' bending toward the proximity where narcotics ultimately were discovered.[9] That movement is consistent with innocent action. When a person is seated in a vehicle, the act of looking directly behind them without the aid of mirrors necessarily requires a leaning forward and turning of the upper body. The leaning forward action also is consistent with the innocent action of leaning forward to hear what the front occupants are saying or to speak to the front occupants.

---

[9] Here, however, the relationship between the furtive movements and the contraband of which the state seeks to prove possession is significantly more attenuated than the facts indicated in *Brunori* and *In re Benjamin C.*, in which the court found furtive movement in close proximity to contraband not probative of possession. *In re Benjamin C.*, supra, 22 Conn. App. 462; *State* v. *Brunori*, supra, 22 Conn. App. 439. Unlike those cases, there was no testimony in the trial court that the defendant's arms were ever extended or that the defendant handed anything to the other occupants. Chrostowski and Brody testified that they did not observe the defendant hand anything to the other occupants, and Grzegorzek did not testify that he observed the defendant hand anything to the other occupants.

As a result, the nondescript furtive movements, the leaning forward by the defendant toward Laliberte and turning to look back at the police cruiser when the lights were initiated, do not create or support an inference of possession without some other evidence that permits or buttresses the inference.

In its brief and at oral argument, the state attempted to distinguish *Brunori* and *In re Benjamin C.* because those cases required proof beyond a reasonable doubt, as opposed to proof by a preponderance of the evidence, the standard applicable in probation revocation hearings. The language employed by the court in *Brunori* and *In re Benjamin C.* in discussing the value of evidence of furtive movement to create or to support an inference of possession is not that of proof beyond a reasonable doubt. In *Brunori*, the court found that such evidence was not probative in supporting an inference of possession. *State* v. *Brunori*, supra, 22 Conn. App. 439. In *In re Benjamin C.*, the court also found that similar evidence did not rise to the level of probable cause for possession. *In re Benjamin C.*, supra, 22 Conn. App. 462. The probative value and probable cause thresholds are both below the threshold of proof required by the preponderance of the evidence standard. As a result, the state's argument is unavailing.

The court also relied on the fact that after the furtive movements, Laliberte was observed stuffing something down her pants that was later identified as crack cocaine. Specifically, the court found that the defendant had bent forward and handed the larger piece of crack cocaine to Laliberte, which she concealed in her pants. The record is devoid of any evidence that would permit such an inference. There was no testimony at trial that the defendant's arms were ever extended or that the defendant handed anything to the other occupants. Chrostowski and Brody testified that they did not observe the defendant hand anything to the other occu-

pants, and Grzegorzek did not testify that he observed the defendant hand anything to the other occupants. The information provided to Chrostowski by the confidential informant, to whose reliability Chrostowski attested, indicated only that Laliberte possessed cocaine. Furthermore, there was no fingerprint analysis of the bag of crack cocaine to establish that the defendant possessed it at any time, nor was there any chemical analysis of the larger piece of crack cocaine and the crumbs to establish a connection between the substances. The court's finding that the defendant handed Laliberte the larger piece of crack cocaine was clearly erroneous.

Finally, the court relied on the address book, recovered from the defendant, which contained names, addresses and telephone numbers of people familiar to the arresting officers. The address book also contained names and addresses of persons in Puerto Rico and the Dominican Republic and a book seller in Enfield, Connecticut. The address book also contained $2, a social security number and banking information. Chrostowski, the officer who searched the defendant and seized the address book, admitted that the address book could be the defendant's personal address book. Although Chrostowski believed the address book might be related to drug trade, he did not ascertain whose social security number and bank information it contained and did not contact any of the people listed in the address book.

The state relies on several cases in support of its claim that the facts in this case are sufficient to prove possession by a preponderance of the evidence. We find those cases distinguishable from the present case.[10]

[10] In *State* v. *Leon-Zazueta*, 80 Conn. App. 678, 836 A.2d 1273 (2003), cert. denied, 268 Conn. 901, 845 A.2d 405 (2004), although there was no evidence placing the defendant in his apartment at the time narcotics were delivered by mail, the court found sufficient evidence to support inferences of knowledge of presence and control over the narcotics. The evidence demonstrated

Furthermore, the present case stands in stark contrast to cases in which this court has affirmed judgments finding a probation violation on the basis of possession. See *State* v. *Davis*, supra, 84 Conn. App. 505; *State* v. *Hooks*, 80 Conn. App. 75, 832 A.2d 690 (2001), cert. denied, 267 Conn. 908, 840 A.2d 1171 (2003); *State* v. *Shannon*, 61 Conn. App. 543, 764 A.2d 1281 (2001). Here, the narcotics were not on the defendant's person, they were not found in a place under his exclusive or shared control, the police did not observe or videotape him engaging in any transaction, there were no controlled purchases from him, the police did not observe him pass anything to the other occupants in the car, he did not flee, he did not attempt to conceal the crumbs of crack cocaine and he did not make any incriminating statements. The only evidence offered to prove that the defendant was in possession of the crumbs of crack cocaine was his proximity to the crumbs and that he engaged in "furtive" movements. Under the preponder-

that two packages containing cocaine arrived at the defendant's residence on the day he expected them. One package was addressed to him by name. The defendant's roommate testified that the defendant had asked her to sign for two packages on his behalf on that day. During a warrant search of the residence, the police recovered other empty packages sent from the same address, an open box of sandwich bags, a digital scale, a large pan and an open box of baking soda. In the present case, there are no statements from which possession may be inferred, the defendant did not have any control over the location where the narcotics were recovered, and the "drug related items" are not of a similar nature.

In *State* v. *Delarosa*, 16 Conn. App. 18, 547 A.2d 47 (1988), the defendant was a passenger in a car in which a large quantity of cocaine was found. Some of the cocaine was discovered in plain view on the vehicle floor in close proximity to the defendant. The vehicle in which the defendant was riding was actively being employed in a drug trafficking venture from New York to Boston. The defendant appeared fidgety and nervous through the traffic stop and was continually wiping his nose. The present case does not involve a large quantity of narcotics, there are no allegations that the vehicle was actively being employed in a drug trafficking venture and the defendant's gestures do not link him to the narcotics in a similar way that persistently wiping one's nose does when there is a large amount of cocaine in close proximity.

ance of the evidence standard, that evidence is insufficient to prove possession of narcotics. Reviewing the record before us, we conclude that the court could not, by a preponderance of the evidence, find that the defendant possessed either the crumbs of crack cocaine on the seat next to him or the larger piece of cocaine recovered from Laliberte.

The judgment is reversed and the case is remanded with direction to render judgment in favor of the defendant.

In this opinion FLYNN, J., concurred.

BISHOP, J., dissenting. The central issue in this appeal is whether the trial court drew impermissible inferences in concluding, from the proven predicate facts, that the defendant, Hector Fermaint, violated the terms of his probation by the criminal possession of narcotics. Relying on decisional law that states that a court may not draw an inference of possession from mere spatial or temporal proximity or from furtive movements alone, the majority has determined that the court's conclusion of possession was unwarranted. Because I believe the court was entitled to reach the conclusion that the defendant possessed narcotics, I would affirm the court's finding of a violation of probation.

The underlying predicate facts found by the court may be summarized as follows. On May 1, 2001, Officer Jerry Chrostowski of the New Britain police department received a telephone call from a confidential informant that Kara Laliberte was in the Pinnacle Heights housing project and was in possession of cocaine. The informant also told Chrostowski that Laliberte was in her Honda Accord, accompanied by two males, and he identified one of the males as "Hector," Laliberte's boyfriend. After locating Laliberte and the Honda, watching the automobile for five to fifteen minutes and observing

the car leave the area, Chrostowski called over the police radio for a marked police vehicle to stop the Honda.

Officer Raymond Grzegorzek, who was in a marked cruiser, stopped the Honda. Immediately in back of the marked cruiser was Chrostowski's car. Grzegorzek informed Chrostowski that he had observed the occupants of the car engaging in furtive movements. As Chrostowski approached the vehicle, he observed a lot of furtive movements between the backseat passenger, later identified as the defendant, and Laliberte. When the headlights of the cruiser were on the Honda, Chrostowski saw the defendant make a bending movement from the backseat toward Laliberte, who was seated in the front passenger seat. As Officer Christopher Brody, who was working with Chrostowski, approached the Honda, he observed Laliberte putting something down her pants. Chrostowski approached the defendant and noticed, with the aid of his flashlight, several crumbs of a rock like substance on the seat next to the defendant. Believing the crumbs to be crack cocaine, Chrostowski asked the other officers to escort the driver and passengers from the car. Chrostowski collected the crumbs found on the backseat and field tested them. They tested positive for the presence of cocaine. The Honda was searched, and a small amount of green leafy substance was found in the front carpet area of the car. That substance tested positive for marijuana. A plastic bag with a large rock like substance was found in Laliberte's pants. It tested positive for crack cocaine. Laliberte also had $120 in cash concealed in her bra. An address book was recovered from the defendant containing names of people that were familiar to the arresting officers from prior drug transactions and drug arrests.[1] The

---

[1] Although the majority notes that the police discovered an address book containing names of people familiar to the police, I think it has some significance that the names were familiar to the police "from prior drug arrests— or drug investigations," as the court stated.

book also contained other names and personal information of the defendant. No drugs were found on the person of the defendant who was carrying $2 at the time.

On the basis of those factual findings, the court found "that the defendant had knowing possession and control of the crack cocaine crumbs observed and seized by Officer Chrostowski" and that "the evidence that the defendant was observed bending toward Kara Laliberte after he saw the police were behind him, and the furtive movements [that] the officers observed the defendant and Ms. Laliberte [engage] in as the officers approached the car, led to a reasonable inference that the defendant bent forward and handed the larger piece of crack cocaine to Kara Laliberte, which she concealed in her pants." Finally, on the basis of those inferences, the court found that "the evidence adduced at the violation of probation hearing was reliable and probative, and establishes by a fair preponderance of the evidence that the defendant possessed narcotics on May 1, 2001, and thereby violated a condition of his probation."

I begin my analysis basically. In legal parlance, the term "inference" is defined as "a permissible deduction from the evidence before the court which the [finders of fact] may accept, reject, or accord such probative value as they desire . . . [a] permissible deduction which the trier of the facts may adopt, without an express deduction of law to the effect . . . [i]n a proper sense, the thing proved . . . [n]ot guesswork." Ballentine's Law Dictionary (3d Ed. 1969). In common language, an "inference" is defined as "the act or process of inferring or deriving a conclusion from facts or premises." Webster's II New Riverside University Dictionary (1994). In plain terms, an inference is simply a deduction or conclusion based on proven facts.

Our tradition is to give deference on appeal to the inferences drawn by fact finders. Our Supreme Court

has opined: "The trier may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Berger*, 249 Conn. 218, 224, 733 A.2d 156 (1999). The ability to draw inferences is, of course, not unbounded. We are instructed that "[i]t is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determine whether the inferences drawn by the jury are so unreasonable as to be unjustifiable." (Citations omitted; internal quotation marks omitted.) *State* v. *Ford*, 230 Conn. 686, 692, 646 A.2d 147 (1994). Thus, from our decisional law, we know that the trier may draw whatever inferences from the facts it deems to be reasonable and logical, including inference of inferences, and those inferences will be found, on appeal, to be reasonable as long as they are not so unreasonable as to be unjustifiable. Additionally, our Supreme Court has noted that "no clear line of demarcation exists between a permissible inference and an impermissible speculation . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 501, 698 A.2d 898 (1997).

In assessing whether the line has been crossed, we are not, however, totally without guidance. We know that "[p]roof of a material fact by inference from circumstantial evidence need not be so conclusive as to exclude every other hypothesis. It is sufficient if the evidence produces in the mind of the trier a reasonable belief in the probability of the existence of the material fact. . . . Thus, in determining whether the evidence supports a particular inference, we ask whether that inference is so unreasonable as to be unjustifiable. . . . In other words, an inference need not be compelled by the evidence; rather, the evidence need only be reason-

ably susceptible of such an inference. Equally well established is our holding that a jury may draw factual inferences on the basis of already inferred facts. . . . Moreover, [i]n viewing evidence which could yield contrary inferences, the jury is not barred from drawing those inferences consistent with guilt and is not required to draw only those inferences consistent with innocence." (Internal quotation marks omitted.) *State* v. *Niemeyer*, 258 Conn. 510, 518–19, 782 A.2d 658 (2001). Finally, in assessing the reasonableness of inferences drawn by a fact finder, we accord the trier the right to use common sense and to draw from experience. See *State* v. *Ford*, supra, 230 Conn. 693.

In reaching its determination that the trial court drew impermissible inferences, the majority, I believe, has incorrectly relied on cases readily distinguishable and has distinguished a case that is persuasively akin to the facts at hand. Additionally, I believe that in assessing whether the predicate facts warranted the inference of possession, the majority incorrectly reviewed each fact in isolation without regard to the cumulative weight of all the facts.

In reversing the judgment, the majority relies on *State* v. *Brunori*, 22 Conn. App. 431, 578 A.2d 139, cert. denied, 216 Conn. 814, 580 A.2d 61 (1990), and *In re Benjamin C.*, 22 Conn. App, 458, 577 A.2d 1117 (1990). Because the factual underpinnings of both *Brunori* and *In re Benjamin C.* are dissimilar to the facts at hand, I believe that reference to them is not helpful to an analysis of whether the court in this instance drew impermissible inferences. In *Brunori*, a defendant convicted of unlawful possession of narcotics appealed on the ground of evidentiary insufficiency. *State* v. *Brunori*, supra, 432. This court agreed and reversed the judgment. Id. In that case, the defendant had been standing on a street adjacent to a building and had been seen bending down near the location at which the police

then found narcotics and drug paraphernalia. Id., 433. In reversing the defendant's conviction, this court determined that the defendant could have bent down for a variety of nonculpable reasons and that the narcotics and paraphernalia were found in an area accessible to an indeterminate number of people. Id., 439–40. Thus, we concluded, those facts were an insufficient basis from which the fact finder could infer that the defendant was in possession of narcotics and drug paraphernalia. Id., 440. In reaching its conclusion, the *Brunori* court was particularly mindful that the drugs and drug related materials were found in a public space. The court commented: "[I]t is well settled that if the contraband is found in a place where the defendant does not have exclusive possession, the presence of the defendant near the contraband without more is insufficient to support an inference of possession. . . . Under such circumstances, the state must offer some additional evidence that would tend to buttress an inference of possession." (Citation omitted.) Id., 436. The court continued: "We consider this proof requirement to hold true especially where, as here, the contraband was found in a public area. Unlike contraband found either in an automobile with multiple passengers or in shared premises, contraband found in a public area could have been secreted there by virtually anyone." Id. Unlike a street corner, the inside of a car is a confined space. This court was right in *Brunori* to recognize the difference between constructive possession in a public space and constructive possession in an automobile. In citing *Brunori*, my colleagues in the majority have ignored that significant difference.

Similarly, the majority cites *In re Benjamin C.*, supra, 22 Conn. App. 458, for the proposition that evidence that the defendant leaned over as if to tie his shoelaces while standing on a public sidewalk in an area with a history of heavy drug activity was, alone, without fur-

ther evidence linking him to the drugs, an insufficient indicator that he was is in possession of drugs found under the siding of a nearby house. In that case, this court concluded: "Bending over as if to tie one's shoe is one of those innocent gestures that can be mistaken for a guilty movement. The motivation for such an action may run the whole spectrum from the most legitimate to the most heinous. It is because of this danger that the law requires more than a mere furtive gesture to constitute probable cause for a search or arrest, let alone proof beyond a reasonable doubt for conviction." Id., 462. Unlike *In re Benjamin C.*, in this case, the defendant's furtive gesture of leaning forward toward the front seat passenger, seen in the context of the entire incident and in combination with other factors, warranted the inference of possession. As noted by the court, during the incident, the defendant and Laliberte acted furtively and looked back at the approaching police. Furthermore, the police discovered crack cocaine adjacent to the defendant who was the sole backseat passenger, they took an address book from the defendant containing names of individuals known to the police from prior drug arrests and transactions, and they discovered additional crack cocaine in Laliberte's pants. These facts comprise a totality of circumstances, from which I believe the court reasonably drew the inference of possession.

Dismissed by the majority as not pertinent is *State* v. *Delarosa*, 16 Conn. App. 18, 547 A.2d 47 (1988). Contrary to my colleagues' view, I believe the facts of *Delarosa* and those at hand are strikingly akin. In *Delarosa*, in which this court affirmed the defendant's conviction of possession of narcotics with intent to sell, the defendant, like the defendant in this case, was the lone backseat passenger in a car in which there was also a driver and a front right seat passenger. Id., 21. In *Delarosa*, during a routine motor vehicle stop, a polce officer

observed white power, later proven to be cocaine, on the floor where the defendant was seated. Id. In this case, the police discovered cocaine on the rear seat adjacent to the defendant. When the officer in *Delarosa* began to question the vehicle's occupants about the powder, he noted that the defendant appeared fidgety and nervous and that he continually wiped his nose. Id. In this case, the defendant kept glancing back toward the approaching police, and he leaned forward toward the front seat passenger in whose pants pocket cocaine later was discovered. Additionally, in *Delarosa*, the officer noted a trail of white powder leading from the right front floor to the area of the seat belt recoil receptacle where a clear plastic bag containing cocaine was discovered, and the officer discovered a beeper on the person of one of the front seat occupants. Id. Subsequently, a search of the vehicle's trunk revealed additional bags of cocaine wrapped in newspaper contained in a grocery bag. Id., 22. In my view, the differences between the facts in *Delarosa* and the facts at hand relate to evidence of sale rather than simple possession. The evidence of possession in *Delarosa* was on a par with the evidence confronted by the trial judge in this case whose factual determination the majority rejects.

Finally, while I agree that furtive movement alone is insufficient proof of possession and that proximity to drugs alone is insufficient evidence of possession, my colleagues in the majority fail to embrace the bedrock principle that in drawing the inference of possession, a trier is entitled to assess the totality of the circumstances. See *State* v. *Polanco*, 69 Conn. App. 169, 178, 797 A.2d 523 (2002). Thus, in assessing the defendant's furtive movements, his looking back at the police and his leaning down toward Laliberte, who put something in her pants and in whose pants cocaine was discovered, while each action alone may be an insufficient basis for the inference of possession, the trier was entitled

to consider, and did consider, the significance of the defendant's furtive movements in the broader context of the discovery of crack cocaine on the rear seat, of which the defendant was the lone passenger, and the defendant's possession of an address book containing names familiar to the police from prior drug transactions and arrests in deducing from all the evidence that the defendant was in possession of narcotics. As this court concluded in *Brunori*, in analyzing whether an inference is supported by the facts, we must look to the cumulative effect of the evidence. The court stated: "We are well aware that [w]here a group of facts [is] relied upon for proof of an element of the crime it is their cumulative impact that is to be weighed in deciding whether the standard of proof . . . has been met . . . ." (Internal quotation marks omitted.) *State* v. *Brunori*, supra, 22 Conn. App. 440.

In sum, on the basis of my review of pertinent decisional law, I believe the trial court drew the permissible inference that the defendant was in possession of narcotics from the proven facts. In reversing the court's decision, I believe the majority has failed to accord to the trial court the latitude of fact-finding our tradition demands. Finally, I believe, that in parsing the individual predicate facts to determine that each fact alone was insufficient to warrant an inference of possession, the majority has failed to accord proper latitude to the right and responsibility of the trial court to view all the evidence cumulatively in determining whether the evidence, in toto, justified an inference of possession. Because I agree that the court correctly discharged its responsibility and reasonably made its determination, I would affirm its finding that the defendant violated the terms of his probation.

Because I would affirm the court's determination that the defendant violated the terms of his probation, I, unlike the majority, must reach the second issue raised

by the defendant on appeal, which is that the delay in holding his probation revocation hearing violated General Statutes § 53a-32 (a) and his constitutional rights to due process and a speedy trial.

The following additional facts are relevant to the defendant's claim. The defendant was arrested on a charge of violation of probation on August 25, 2001, and found to be in violation of probation after a hearing conducted on January 22, 2004. Thus, nearly two and one-half years passed between arrest and adjudication. On that basis, the defendant now claims that the delay between the arraignment and his hearing violated § 53a-32 (a), and his constitutional rights to due process and a speedy trial.

Section 53a-32 (a) provides, in relevant part, that upon a defendant's arrest for a violation of probation, "the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges . . . ." In *State* v. *Toler*, 192 Conn. 321, 471 A.2d 643 (1984), our Supreme Court set forth enumerated factors to be considered in determining whether a delay between arraignment for a violation of probation and hearing constituted an unnecessary delay. The court reviewed the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." (Internal quotation marks omitted.) Id., 324. In the case at hand, the record is devoid of any assertion by the defendant of his statutory right to be heard without unnecessary delay, nor does the record reveal that he objected to the passage of time between arraignment and hearing. Additionally, the record reflects that while the probation violation charge against the defendant was pending, he had other charges pending against him, including felony murder, and that all of his files had been consolidated for pretrial discussion purposes. The record also reveals that many of the continuances on the defen-

dant's then pending charges, including this matter, were continued at his request or with his assent.[2]

As to his statutory claim, the defendant has provided this court with no basis, either by a review of the record or by cogent argument, to determine that he was prejudiced by the lapse of time between his arraignment and the violation of probation hearing.

In addition to his statutory claim, the defendant asserts that the delay in the proceedings deprived him of his constitutional rights to due process and to a speedy trial. These claims, too, fail because the record is not adequate for review. Recognizing that he did not assert in the trial court any right to a speedy trial and that he made no claim that the passage of time between arraignment and hearing deprived him of due process, the defendant now seeks review under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). In order to achieve review of an unpreserved constitutional claim, however, the record provided to this court on appeal must be adequate for review. As I have noted, however, the defendant has provided this court with some but not all of the transcripts of his several court appearances while this and other matters in which he was a defendant were pending.[3]

Finally, the defendant seeks plain error review. See Practice Book § 60-5. I would decline to grant such review. Although I would agree that the passage of

[2] I note that although the defendant has provided this court with some transcripts of his various court appearances while this case and others were pending and that the state has augmented the defendant's filings, this court has not been furnished with all the transcripts of the defendant's court appearances on this matter between arraignment and hearing. Consequently, this court is unable to determine definitely the reason for each continuance. I note, as well, that it is the appellant's responsibility to furnish a record adequate for review of the issues he raises on appeal. *New Haven Savings Bank* v. *Mongillo*, 67 Conn. App. 799, 801, 789 A.2d 547 (2002).

[3] From the record provided, however, I note that many of the continuances were granted at the defendant's request or with his concurrence.

twenty-nine months between arraignment and hearing on a violation of probation charge is a substantial time period, the time factor, alone, is an inadequate basis for a determination that a defendant's rights have been prejudiced. As our Supreme Court has noted, a substantial delay between arrest and trial may be a sufficient basis to warrant inquiry into other factors regarding the delay, but the passage of time, alone, is not sufficient to determine a violation of the right to a speedy trial. See *State* v. *Gasparro*, 194 Conn. 96, 99–100, 480 A.2d 509 (1984), cert. denied, 474 U.S. 828, 106 S. Ct. 90, 88 L. Ed. 2d 74 (1985). "Plain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) *State* v. *Taylor*, 239 Conn. 481, 502, 687 A.2d 489 (1996), cert. denied, 521 U.S. 1121, 117 S. Ct. 2515, 138 L. Ed. 2d 1017 (1997). I do not believe this is such a situation.

For the reasons given, I respectfully dissent.