STATE OF CONNECTICUT *v.* KENNETH FOWLER
(AC 25185)

Bishop, DiPentima and Hennessy, Js.

155

Argued September 27, 2006—officially released July 3, 2007

*Carlos E. Candal*, special public defender, for the appellant (defendant).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Carl R. Ajello III*, assistant state's attorney, for the appellee (state).

*Opinion*

HENNESSY, J. The defendant, Kenneth Fowler, appeals from the judgments of the trial court finding him in violation of probation pursuant to General Statutes § 53a-32. On appeal, the defendant claims that the court improperly denied his motion in limine to preclude evidence of his previous guilty pleas and therefore (1) improperly found that he had violated his probation and (2) abused its discretion in revoking his probation. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our resolution of the defendant's appeal. On

December 10, 1997, the defendant pleaded guilty to two counts of larceny in the first degree and one count of possession of narcotics. The court, *Dyer, J.,* sentenced the defendant on each of those counts to seven years in prison, suspended after two years, followed by three years of probation. The sentences were ordered to be served concurrently. On June 15, 2000, the defendant was released from incarceration and began his probation. On February 26, 2003, the defendant was found to have violated his probation, and the court, *Keller, J.,* extended the period of probation on all three cases, by nine months, concurrent on all files.

On February 26, March 4 and April 23, 2003, the defendant again reviewed the conditions of his probation, and, by signing the probation conditions form, again attested to understanding the conditions and agreed to abide by them. At the April 23, 2003 meeting, probation officer Matthew Buzzeo told the defendant to report to him on May 27, 2003. The defendant failed to report as directed. On June 5, 2003, the defendant was arrested by the Manchester police department and charged with larceny in the third degree, use of drug paraphernalia, forgery in the second degree, interfering with an officer, resisting arrest and failure to comply with fingerprint requests. On June 23, 2003, by virtue of his arrest and the previously mentioned failure to report, Buzzeo swore out a warrant for the arrest of the defendant for violation of probation.[1] On July 1, 2003, the defendant

[1] The probation officer requested that a warrant be issued for the arrest of the defendant for a violation of probation pursuant to § 53a-32 for violating the following conditions: "Do not violate any criminal law of the United States, this state or any other state or territory. . . . Report as the Probation Officer directs, give immediate notice if arrested and, if incarcerated, report to the Probation Officer immediately upon your release. . . . Keep the probation officer informed of your whereabouts, give immediate notice of any change in address, telephone, beeper, employment or other circumstances and permit the Officer to visit you as circumstances may require."

pleaded guilty to conspiracy to commit larceny in the sixth degree and failure to appear in the second degree. The court, *Alvord, J.*, sentenced the defendant to a period of imprisonment of thirty days on each count to run concurrently.

Although the guilty pleas were not alleged in the warrant for violation of probation, the state gave the defendant timely notice of its intent to rely on acts of misconduct, which included the crimes to which the defendant pleaded guilty on July 1, 2003. In response, the defendant filed a motion in limine on December 17, 2003, to preclude evidence of the July 1, 2003 guilty pleas, claiming that they were unreliable due to an improper canvass as to his waiver of counsel.[2] On December 19, 2003, Judge Keller rendered an oral decision in which she found the defendant's claim in the motion in limine to be without merit. Although the court found by a fair preponderance of the evidence that the defendant had violated the first two conditions of his probation by failing to report to Buzzeo as directed and by violating two criminal laws of this state during his probationary period, it also found that the state did not prove by a fair preponderance of the evidence that he failed to keep the probation office advised of his address. After finding that the defendant had violated two conditions of probation, Judge Keller revoked his probation. This appeal followed. Additional facts will be set forth as necessary.

---

[2] The defendant argued in his motion in limine that he had pleaded guilty without counsel because his waiver of counsel was not knowing and intelligent. Specifically, he argued that the court did not adequately canvass him regarding his waiver of counsel in that (1) it did not adequately determine that he possessed the intelligence and capacity to appreciate the consequences of self-representation; (2) it did not adequately determine whether he understood the nature of the charges and proceedings, the range of permissible punishments and any additional facts essential to a broad understanding of the case; and (3) it did not adequately apprise itself that he was made aware of the dangers and disadvantages of self-representation.

I

At the outset, we must address an argument raised by the state, claiming that this court does not have subject matter jurisdiction to consider a collateral attack on the validity of guilty pleas obtained in a wholly separate proceeding. Because subject matter jurisdiction implicates the authority of the court, the issue, once raised, must be resolved before proceeding to the merits of the case. See *Ajadi* v. *Commissioner of Correction*, 280 Conn. 514, 533, 911 A.2d 712 (2006).

The state argues that the defendant is precluded from collaterally attacking a previously entered and unchallenged guilty plea[3] because he pleaded guilty to the crime that forms the basis for the violation of probation. The state relies on *State* v. *Singleton*, 274 Conn. 426, 876 A.2d 1 (2005), for the proposition that a criminal conviction may have preclusive effect on an appeal from a violation of probation, which is consistent with the general proposition that a defendant must attack directly the underlying conviction, rather than challenge the validity of the judgment in a collateral proceeding. The state claims that until and unless the defendant's criminal judgment is vacated, the preclusive effect of that conviction cannot be challenged in this forum. See *Carnemolla* v. *Walsh*, 75 Conn. App. 319, 327, 815 A.2d 1251, cert. denied, 263 Conn. 913, 821 A.2d 768 (2003). Therefore, according to the state, the defendant's valid guilty plea has preclusive effect, there is no controversy for purposes of justiciability, and we lack subject matter jurisdiction to hear the

[3] We note that the defendant failed to file any of the following: (1) a motion to withdraw his pleas pursuant to Practice Book § 39-26, (2) a direct appeal or (3) a habeas corpus petition. The defendant raised the issue of the adequacy of the plea canvass for the first time in a motion in limine at his subsequent violation of probation hearing, held five months after he pleaded guilty.

appeal. See *State* v. *McElveen*, 261 Conn. 198, 217–18, 802 A.2d 74 (2002). We are not persuaded.

This case falls outside the ambit of *Singleton* because the defendant pleaded guilty prior to the violation of probation hearing.[4] In his appeal from the judgments revoking his probation, he challenges the trial court's refusal to preclude the introduction of evidence of his guilty pleas. As an appellate court, we may consider an evidentiary ruling upon final disposition of the case. See *Sharon Motor Lodge, Inc.* v. *Tai*, 82 Conn. App. 148, 160 n.9, 842 A.2d 1140, cert. denied, 269 Conn. 908, 852 A.2d 738 (2004). Contrary to the state's apparent argument, the very existence of those pleas does not deprive us of subject matter jurisdiction. We therefore proceed to the merits of the defendant's claim.

II

The defendant first claims that the court improperly denied his motion in limine to preclude evidence of his previous guilty pleas. We conclude that the court's denial of the motion in limine was proper.

We begin with the applicable standard of review. "The scope of our appellate review depends upon the proper characterization of the rulings made by the trial court." (Internal quotation marks omitted.) *Olson* v. *Accessory Controls & Equipment Corp.*, 254 Conn. 145, 156, 757 A.2d 14 (2000). We ordinarily review evidentiary claims pursuant to the abuse of discretion standard. See, e.g., *State* v. *Spiegelmann*, 81 Conn. App. 441, 448, 840 A.2d 69, cert. denied, 268 Conn. 921, 846 A.2d 882 (2004). The court's ruling on the motion in limine in the present case was based on its determination that Judge Alvord's

---

[4] In this case, the defendant pleaded guilty to the underlying criminal charge that formed the basis for the finding of a violation of probation prior to the violation of probation proceeding, whereas the defendant in *Singleton* pleaded guilty subsequent to the violation of probation proceeding.

canvass in the prior proceeding was sufficient to determine that the defendant knowingly, voluntarily and intelligently waived his right to counsel. We review for abuse of discretion a trial court's determination as to whether the defendant knowingly and voluntarily elected to proceed pro se. See, e.g., *State* v. *Bangulescu,* 80 Conn. App. 26, 43, 832 A.2d 1187, cert. denied, 267 Conn. 907, 840 A.2d 1171 (2003). Accordingly, we review the court's denial of the defendant's motion in limine for abuse of discretion. With these principles in mind, we turn now to the defendant's specific claim.

The defendant claims that the court, *Keller, J.,* improperly denied his motion in limine to preclude evidence of his previously entered guilty pleas, which, he alleges, were unreliable because of a constitutional infirmity due to an inadequate canvass in the proceeding in which he waived his right to counsel and pleaded guilty. Specifically, the defendant argues that the guilty pleas are constitutionally defective because his waiver of counsel was not proper; therefore, when he pleaded guilty, he did so without representation in violation of his sixth amendment right to counsel. The defendant claims that the record does not show a knowing and intelligent waiver of his rights to counsel guaranteed by the constitution of Connecticut, article first, § 8, and the United States constitution, and that the trial court, *Alvord, J.,* failed to comply with Practice Book § 44-3. Therefore, the defendant argues, the guilty pleas should have been precluded from evidence at the violation of probation proceeding, and the court's failure to do so was prejudicial to him and, thus, improper.

The defendant argues that his waiver was not knowing and intelligent because the court did not thoroughly discuss the range of possible punishments, and he did not fully understand the nature and consequences of the charges. Specifically, the court failed to ask him if

he was on probation.[5] The defendant further argues that he was not advised of possible defenses and other rights of which counsel should be aware, or that a defendant proceeding pro se will not be allowed to complain on appeal about the competency of his representation. In addition, the defendant argues that he should have been canvassed prior to speaking with the prosecutor, not once his plea has begun.[6] Thus, the defendant argues, he did not possess the intelligence and capacity to appreciate the consequences of self-representation and did not knowingly waive his right to counsel.

[5] The defendant argues that because the court failed to ask whether he was on probation, he did not have notice that his guilty pleas could be used against him in a subsequent violation of probation hearing and, therefore, did not appreciate the range of permissible punishments and could not have knowingly and intelligently waived counsel. The defendant, however, cannot plead ignorance or lack of notice of the fact that violating a criminal law would result in a violation of his probation. Case law in our state reveals that "[w]here criminal activity forms the basis for the revocation of probation, the law imputes to the probationer the knowledge that further criminal transgression will result in a condition violation and the due process notice required is similarly met. An inherent condition of probation is that the probationer not commit further violations of the criminal law while on probation." (Internal quotation marks omitted.) *State* v. *Reilly*, 60 Conn. App. 716, 728, 760 A.2d 1001 (2000).

Here, where the defendant signed four agreements that he would not violate the laws of the United States, he had actual notice, and for him to claim that he was unaware that breaking a law and admitting guilt would form a basis for a violation of probation is incredulous. Furthermore, the safeguards this defendant seeks through the canvass in the court are supplied by the judicial system through a different conduit, that conduit being the probation office. See id., 731 ("Courts recognize . . . that a defendant may receive notice and fair warning sufficient to comport with due process without necessarily receiving that notice from a court. Indeed, probation officers can provide adequate fair warning."). Thus, the defendant had notice, and his due process rights were not infringed upon.

[6] The defendant alleges that the timing of the canvass was inadequate. Specifically, the defendant argues that he should have been canvassed about proceeding pro se prior to speaking with the prosecutor, not once his plea had begun. The defendant does not cite any authority for his position, nor have we discovered any case law that supports his position. Furthermore, the record reveals that canvass by the court, *Alvord, J.*, regarding the defendant's waiver of counsel was proper. See footnote 7.

The defendant's claim that his waiver of his right to counsel was not knowingly and intelligently made because he did not understand the range of permissible punishments and any additional facts essential to a broad understanding of the case against him falls within the purview of Practice Book § 44-3. "[Practice Book § 44-3] was adopted in order to implement the right of a defendant in a criminal case to act as his own attorney . . . . Before a trial court may accept a defendant's waiver of counsel, it must conduct an inquiry in accordance with [Practice Book § 44-3], in order to satisfy itself that the defendant's decision to waive counsel is knowingly and intelligently made." (Internal quotation marks omitted.) *State* v. *Diaz*, 274 Conn. 818, 829, 878 A.2d 1078 (2005).

Recognizing that the defendant's claim implicates his constitutional right to counsel, we do not review the proceedings for strict compliance with the prophylactic rule of Practice Book § 44-3, but rather for evidence that waiver of counsel was made knowingly and voluntarily. See *State* v. *Webb*, 238 Conn. 389, 429, 680 A.2d 147 (1996), aff'd after remand, 252 Conn. 128, 750 A.2d 448, cert. denied, 531 U.S. 835, 121 S. Ct. 93, 148 L. Ed. 2d 53 (2000). There is no constitutional requirement that the court question a defendant in a canvass during the waiver of right to counsel as to whether the defendant is currently on probation. In fact, "[t]he defendant . . . does not possess a constitutional right to a specifically formulated canvass [with respect to this inquiry]. His constitutional right is not violated as long as the court's canvass . . . is sufficient to establish that the defendant's waiver was voluntary and knowing." (Internal quotation marks omitted.) *State* v. *Diaz*, supra, 274 Conn. 831. Practice Book § 44-3 protects a defendant from waiving the right to counsel when he does not understand the nature and consequences of the charges against him. There is, however, no requirement that the

court adhere to a specific litany of inquiries to ensure that the defendant is as well protected as he would be if he had counsel.

After a thorough review of the transcripts and the record, we conclude that the defendant's waiver of counsel was knowing and voluntary.[7] Judge Alvord

[7] The following is an excerpt of the relevant transcript testimony:

"[The Prosecutor]: We have an agreed upon disposition in this matter, Your Honor, for a sentence of thirty days to serve on the conspiracy to commit larceny in the sixth degree, and a sentence of thirty days to serve on the failure to appear. That's to run concurrent. Total, effective, thirty days to serve.

"The Court: Mr. Fowler, the court's going to ask you some questions about your case and your decision to plead guilty to these two charges. The purpose of the questions isn't to trick you, but to be sure that you understand what you're doing here today. How old are you?

"[The Defendant]: Forty.

"The Court: And how far did you go in school?

"[The Defendant]: Twelfth grade. Graduated.

"The Court: Are you presently under the influence of any alcohol, drugs or medication of any kind that would prevent you from fully understanding what's happening in court today?

"[The Defendant]: No, Your Honor.

"The Court: Have you had enough time to consider and discuss your case and your decision to plead guilty to conspiracy to commit larceny sixth and failure to appear second?

"[The Defendant]: Yes, Your Honor.

"The Court: And did you specifically discuss with the prosecutor the elements of those two crimes, and what the maximum and minimum penalties would be, were you to be convicted?

"[The Defendant]: Yes.

"The Court: And do you understand [that] the state is represented by a lawyer in this matter and that you also have the right to be represented by a lawyer?

"[The Defendant]: Yes.

"The Court: Do you understand [that] you are at a disadvantage today because you don't have a lawyer representing you, to advise you as to whether or not you should plead guilty or go to trial?

"[The Defendant]: Yes.

"The Court: Knowing that information, are you still looking to go ahead today and plead guilty to these two charges?

"[The Defendant]: Yes, Your Honor.

"The Court: Do you understand that by pleading guilty, you're giving up certain of your rights: your right to a trial before the court or a jury with the assistance of a lawyer?

"[The Defendant]: Yes. . . .

"The Court: . . . First of all, the court will make a finding pursuant to the [rules of] practice . . . that the defendant waived his right to counsel.

advised the defendant of his right to the assistance of counsel and the advisability of retaining an attorney given the disadvantage he would face relative to the trained prosecutor. See Practice Book § 44-3 (1) and (4). Moreover, Judge Alvord relied properly on her discussion with the defendant with respect to his age, high school education and present state of mind in determining that he "[possessed] the intelligence and capacity to appreciate the consequences of the decision to represent oneself . . . ." Practice Book § 44-3 (2). The record also demonstrates substantial compliance with Practice Book 44-3 (3), namely, whether the defendant "[comprehended] the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case . . . ." The court, *Alvord, J.*, reasonably relied on the interchange between the court and the defendant for his comprehension of the charges and proceedings, as well as his awareness of procedural devices.[8] See *State* v. *Bangulescu,* supra, 80 Conn. App. 46.

We therefore agree that the defendant comprehended the nature of the claims against him and knowingly and voluntarily waived his right to counsel. We further

His plea is knowingly and voluntarily made. There is a factual basis for the pleas. The pleas are accepted and findings of guilty may enter."

[8] We note that review of the record reveals that the defendant had a firm grasp on the charges against him. In fact, he corrected the court regarding the charges against him:

"The Clerk: On a count of failure to appear [in the first degree], General Statutes § 53a-172, how do you plead, guilty or not guilty?

"[The Defendant]: Ain't that second?

"[The Prosecutor]: I'm sorry?

"[The Defendant]: Ain't that second degree failure?

"[The Prosecutor]: It probably should be a second degree failure. He's got—is it charged as first?

"The Clerk: The [record] has failure to appear second.

"The Court: It's a typo?

"[The Prosecutor]: It should be second, then.

"The Court: So, we'll note the typo."

conclude that the court, *Keller, J.*, properly denied the defendant's motion in limine.

## III

Next, the defendant claims that the court (1) improperly found violations of probation and (2) abused its discretion in revoking his probation.

"[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked. On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . and, if such sentence is revoked, require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion." (Internal quotation marks omitted.) *State* v. *Bostwick*, 52 Conn. App. 557, 560, 728 A.2d 10, appeal dismissed, 251 Conn. 117, 740 A.2d 381 (1999).

The standard of review in violation of probation matters is well settled. To support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. *State* v. *Davis*, 229 Conn. 285, 302, 641 A.2d 370 (1994). "In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . This court may reverse the trial court's initial factual determination that a condition of probation has been violated only if we determine that such a finding was clearly erroneous. . . . A finding of fact

is clearly erroneous when there is no evidence to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *State* v. *Treat*, 38 Conn. App. 762, 769–70, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995).

## A

The defendant claims that the court lacked sufficient evidence to support its finding that he had violated the conditions of his probation. The defendant specifically argues that his motion in limine to preclude evidence of his guilty pleas was denied improperly. The defendant further argues that without the conviction resulting from the guilty pleas, the court did not have sufficient evidence to find him in violation of probation. We have concluded in part II that the court, *Keller, J.*, properly denied the defendant's motion in limine and allowed the previous guilty pleas to enter into evidence. The court, thus, was correct in relying on the conviction presented by the state to find that the defendant had violated a condition of his probation by violating a criminal law. Furthermore, the court, *Keller, J.*, also found that the defendant had violated another standard condition of probation in failing to report to his probation officer as directed, while on probation. It is, thus, clear from the record that the court, *Keller, J.*, had sufficient evidence to support its finding that the defendant had violated the conditions of his probation.

## B

The defendant's remaining claim on appeal is that the court abused its discretion when it revoked his probation. We do not agree.

We have explained that "[a] revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. . . . If a violation [of probation] is found, a court must next determine whether probation should be revoked because the beneficial aspects of probation are no longer being served." (Citations omitted; internal quotation marks omitted.) *State* v. *Ellis T.*, 92 Conn. App. 247, 250, 884 A.2d 437 (2005). "On the basis of its consideration of the whole record, the trial court may continue or revoke the sentence of probation . . . [and] . . . require the defendant to serve the sentence imposed or impose any lesser sentence. . . . In making this second determination, the trial court is vested with broad discretion. . . . In determining whether to revoke probation, the trial court shall consider the beneficial purposes of probation, namely rehabilitation of the offender . . . . The important interests in the probationer's liberty and rehabilitation must be balanced, however, against the need to protect the public." (Internal quotation marks omitted.) *State* v. *Hedge*, 89 Conn. App. 348, 351, 873 A.2d 254 (2005), cert. denied, 274 Conn. 917, 879 A.2d 894 (2005).

Following its determination that the defendant had indeed violated his probation, the court stated that it would proceed to disposition to determine "whether or not to keep [the defendant] on probation any longer, whether it is going to serve any rehabilitative purposes." The court considered evidence of the defendant's probation record, the underlying crime for which he was serving probation, the nature of the incident that led to the revocation of probation hearing[9] and the defendant's criminal history while on probation. After duly

[9] See *State* v. *Quinones*, 92 Conn. App. 389, 391, 885 A.2d 227 (2005) (violation of any one condition of probation would suffice to serve as basis for revoking defendant's probation), cert. denied, 277 Conn. 904, 891 A.2d 4 (2006); *State* v. *Widlak*, 74 Conn. App. 364, 370, 812 A.2d 134 (2002), cert. denied, 264 Conn. 902, 823 A.2d 1222 (2003); see also *State* v. *Payne*, 88

considering the evidence put forth by counsel, the court determined that the defendant had "a long-standing addiction" and that "after spending about thirty months in jail, [the defendant] did okay for a few years." The court finally concluded that the defendant would have a better chance of rehabilitation if sentenced to jail rather than probation. A review of the record shows that the court properly considered whether the beneficial aspects of probation were being served and, therefore, did not abuse its discretion by revoking the defendant's probation and reinstating the unexecuted portion of the defendant's original sentence.

The judgments are affirmed.

In this opinion the other judges concurred.

Conn. App. 656, 660, 870 A.2d 1159, cert. denied, 274 Conn. 903, 876 A.2d 13 (2005).