## STATE OF CONNECTICUT *v.* ANDRE PENDER

Superior Court, Judicial District of New Haven at Meriden,
Geographical Area Number 7
File Nos. N07M-MV05-0024907-T, N07M-CR02-0214003-S

Memorandum filed July 23, 2008

*James R. Turcotte,* supervisory assistant state's attorney, and *Seth R. Garbarsky,* assistant state's attorney, for the state.

*Thomas M. Conroy,* assistant public defender, for the defendant.

RUBINOW, J. Violation of conditional discharge and violation of probation proceedings have been brought against the defendant, Andre Pender. The state argues that its evidence, taken as a whole, is sufficient to establish Pender's constructive possession of marijuana while he was on conditional discharge and on probation, and that he thereby violated the express conditions that prohibited violation of the law. In contrast, the defendant urges the court to find that the state's evidence is insufficient to establish his possession of marijuana and to refrain from concluding that he violated his conditional discharge or his probation by remaining in the presence of others who were engaged in possessing or smoking this contraband.

The court finds the evidence in the present case insufficient to establish Pender's constructive possession of the contraband at issue. As such, the state has failed to meet its burden of proof and cannot prevail in these proceedings.

I

LEGAL BURDEN

Both violation of conditional discharge and violation of probation proceedings are governed by the same standard, as set forth in General Statutes § 53a-32.[1]

---

[1] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge . . . . (d) If such violation is established, the court may: (1) Continue the sentence of probation or conditional discharge; (2) modify or enlarge the conditions of probation or conditional discharge; (3) extend the period of probation or conditional discharge, provided the original period with any extensions shall not exceed the periods authorized by section 53a-29; or (4) revoke the sentence of probation or conditional discharge. . . . No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

"[U]nder § 53a-32, a probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation." (Internal quotation marks omitted.) *State* v. *Fowler*, 102 Conn. App. 154, 165, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007), quoting *State* v. *Bostwick*, 52 Conn. App. 557, 560, 728 A.2d 10, appeal dismissed, 251 Conn. 117, 740 A.2d 381 (1999); see also *State* v. *Workman*, 107 Conn. App. 158, 161, 944 A.2d 432 (2008); *State* v. *Durant*, 94 Conn. App. 219, 223–24, 892 A.2d 302 (2006), aff'd, 281 Conn. 548, 916 A.2d 2 (2007) (per curiam). In the course of this adversarial hearing, "[a] factual determination by a trial court as to whether a probationer has violated a condition of probation must . . . be made." (Internal quotation marks omitted.) *State* v. *Fowler*, supra, 167. Following this adversarial hearing, "[i]f the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked." *State* v. *Davis*, 229 Conn. 285, 290, 641 A.2d 370 (1994).

In both violation of conditional discharge and violation probation proceedings, the state bears the burden of proving each component by reliable and probative evidence and by a preponderance of the evidence. See *State* v. *Treat*, 38 Conn. App. 762, 767, 664 A.2d 785, cert. denied, 235 Conn. 920, 665 A.2d 907 (1995); see also General Statutes § 53a-32 (b); *State* v. *Durant*, supra, 94 Conn. App. 225. Thus, to support a finding of a conditional discharge violation or "[t]o support a finding of probation violation, the evidence must induce a reasonable belief that it is more probable than not that the defendant has violated a condition of his or her probation. *State* v. *Davis*, supra, [229 Conn. 302]. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evi-

dence." (Internal quotation marks omitted.) *State* v. *Fowler*, supra, 102 Conn. App. 165; see also *State* v. *Santos*, 108 Conn. App. 250, 253, 947 A.2d 414 (2008). Moreover, in cases such as those at bar, it is "within the province of the court, as the trier of fact, to weigh the conflicting evidence and determine the credibility of witnesses. . . . *State* v. *Kondracki*, 51 Conn. App. 338, 342, 721 A.2d 567 (1998)." *State* v. *Bryant*, 98 Conn. App. 602, 607–608, 910 A.2d 243 (2006), cert. denied, 281 Conn. 909, 916 A.2d 52 (2007); see also *State* v. *Durant*, supra, 226–27. Acknowledging that the state is entitled to present evidence that is circumstantial as its main support for the pending charge, our "law recognizes no distinction between circumstantial evidence and direct evidence so far as probative force is concerned." (Internal quotation marks omitted.) *State* v. *Mungroo*, 104 Conn. App. 668, 670, 935 A.2d 229 (2007), cert. denied, 285 Conn. 908, 942 A.2d 415 (2008).

## II

### FACTUAL FINDINGS

The parties presented documentary evidence and testimony from: Pender's probation officer; a police officer; an investigator for the office of the public defender; Marcus Williams, another individual who was charged with possession of marijuana in the same transaction; and the defendant. Using the foregoing legal standards, the court finds the following relevant facts.

On June 17, 2005, in Docket No. N07M-CR02-0214003-S, Pender pleaded guilty to violating General Statutes § 21a-279 (a) and received a sentence of one year in prison, execution suspended, with two years of conditional discharge.[2] On September 9, 2005, in Docket No. N07M-MV05-0024907-T, Pender pleaded guilty to violating General Statutes § 14-215 (c) and received a sentence of one year in prison, execution suspended after

---

[2] He also pleaded guilty to violating General Statutes § 53a-172, for which he received an unconditional discharge.

thirty minimum mandatory days of incarceration, with two years of probation.[3] Pender's conditions of probation were imposed by the court and affirmed with him on December 16, 2005, when the probation contract was executed. The special conditions of probation included: successful completion of substance abuse evaluation and treatment, including random urine-breath samples; a charitable contribution in the amount of $500; no operation of a motor vehicle without a valid license; and participation in the victim impact panel. The general conditions stated: "Do not violate any criminal law of the United States, this state or any other state or territory." The defendant has conceded that like prohibition against violation of the law was a criterion of his conditional discharge, as well.

In the last minutes of January 30, 2007, Hamden police Officer Greg Curran drove his marked police vehicle past the Tas-Manias Cafe at 1537 Dixwell Avenue in Hamden. He observed a white 1995 Cadillac Seville parked and idling in the lot adjacent to the cafe. He also observed a similarly situated, very small, gray 2006 Hyundai Sonata automobile in the cafe's parking lot. The Hyundai was occupied by three individuals.

Several minutes after midnight, on January 31, 2007, Pender entered the backseat of the Hyundai. A strong odor of freshly burned marijuana was present in the vicinity of and within the car. Pender, who had smoked marijuana in the past, remained in the backseat of the idling Hyundai for a number of minutes thereafter while a marijuana blunt was smoked by both Marcus Williams, the occupant of the driver's seat in the front, and by Anthony Siciliano, the occupant of the right front passenger seat.

At approximately 12:08 a.m., Curran drove back to the site, and observed both vehicles still parked with

---

[3] He also pleaded guilty to violating General Statutes § 53a-173, for which he received an unconditional discharge.

their engines running as they had earlier appeared. In his vehicle, Curran entered the parking lot and approached the Hyundai. He viewed both Williams and Siciliano reaching around under their seats, acting in a manner consistent with attempting to conceal a weapon or drugs. He observed no such conduct on the part of Pender, who remained occupying the backseat of the vehicle. As he approached the Hyundai, Curran "could smell the odor of what [he] recognized from [his] training and experience, to be marijuana coming from inside the vehicle."

Curran then spoke to the Hyundai's three occupants, each of whom denied that there was "any marijuana in . . . the vehicle." Siciliano, the front seat passenger who had exhibited furtive movements, explained that they were "Just hanging out." When another officer arrived, Siciliano exited the vehicle in compliance with Curran's request. On the ground next to the driver's door, where Williams had been sitting, another officer observed wrappers from cigars and tobacco that had been removed from cigars, consistent with the common practice of emptying the contents of a cigar and then wrapping marijuana in the cigar wrapper to smoke as a blunt.

Curran then "asked Pender . . . to exit the vehicle. He complied without incident." Curran searched Pender but found no weapons or contraband. However, while he was searching Pender, Curran again observed Williams reaching under the driver's seat. Curran then searched the Hyundai. Directly under the driver's seat, in the area where he had seen Williams reach twice, Curran found a bag containing a green leafy substance and two blunts rolled in cigar wrappers. In a small compartment under the vehicle's radio, located approximately midway between the seats in which Williams and Siciliano had been sitting, Curran found a small

green plastic bag, also containing a green leafy substance. Curran found a clear plastic sandwich bag containing a green leafy substance located between the front passenger seat and the vehicle's center console within the small Hyundai vehicle. The green leafy substances found in the Hyundai tested positive for marijuana. Although the area in which the last container of marijuana could have been reached by either Siciliano sitting in the front passenger seat or by Pender sitting in the backseat, Curran had not observed any furtive movements by Pender that were consistent with the location of this contraband or any effort to secrete the substance. Insufficient evidence was presented from which the court could reasonably ascertain the specific quantity of marijuana that was found within that vehicle. There was no evidence that any cash was found in the Hyundai or that any cash was seized from any of its occupants.[4]

The state makes no claim that Pender made any incriminating statements concerning the contraband at issue. At the scene, Williams stated to Curran, "That weed isn't mine."

Siciliano stated to Curran, "I have three pending [drug] charges I am going to court for. Is there any way you can help me out?"

Siciliano admitted ownership of the Seville. With Siciliano's permission, Curran searched this vehicle, within which a prescription bottle containing a green leafy substance was found. Siciliano was also found to be in possession of a pack of rolling papers and a cigarette containing a green leafy substance. These green

---

[4] Although cash is not expressly probative of possession of illegal drugs, our courts acknowledge that "cash [is] relevant to the issue of [a] defendant's alleged participation in narcotics trafficking. Such evidence is commonly admitted as circumstantial evidence of a defendant's intent to sell drugs. See *State* v. *Holeman,* 18 Conn. App. 175, 179, 556 A.2d 1052 (1989)." *State* v. *Garcia,* 108 Conn. App. 533, 539, 949 A.2d 499 (2008).

leafy substances also tested positive for marijuana. These circumstances are sufficient to implicate Siciliano with possession of marijuana.

Williams, who knows Pender, has been convicted of at least five felonies in the past. During the course of this hearing, he credibly admitted that he was smoking marijuana in the car with Siciliano at the time in question and provided credible details concerning his personal preparation of the blunt the two had shared on the night in question. Williams further personally provided credible details concerning his ownership of the marijuana that he had stored in the compartment under the Hyundai's radio and admitted that he was convicted of possessing the marijuana located by the police during this transaction. For this possession, Williams was ordered to pay a $100 fine.

## III

## CONSTRUCTIVE POSSESSION

The state's fundamental claim is that using the preponderance of the evidence applicable in these cases, the facts are sufficient to establish that the defendant constructively possessed marijuana on January 31, 2007, in violation of his conditional discharge in Docket No. N07M-CR02-0214003-S and in violation of his probation in Docket No. N07M-MV05-0024907-T. The defendant responds that in the absence of relevant incriminating statements, furtive conduct or other evidence to corroborate the state's claim, Connecticut's law does not support a finding of constructive possession. Given the totality of the evidence and the factual circumstances presented in these cases, the court is constrained to agree with the defendant, compelling the conclusion that the state has failed to meet its burden of proof.

The legal standard for establishing constructive possession of illegal drugs in Connecticut was comprehensively set forth in *State* v. *Martin*, 285 Conn. 135, 939 A.2d 524 (2008). In that case, the defendant was charged with possession of four ounces or more of a cannabis type substance in violation of § 21a-279 (b), attempt to possess one kilogram or more of marijuana with intent to sell by a person who is not drug-dependent in violation of General Statutes § 21a-278 (b), and conspiracy to possess one kilogram or more of marijuana with intent to sell in violation of General Statutes §§ 21a-278 (b) and 53a-48 (a) by a person who is not drug-dependent. *State* v. *Martin*, supra, 137. The facts of *Martin* are complex and the result is based, with particular precision, on those facts. Generally, however, the case arose from law enforcement's successful efforts to identify the many individuals who were responsible for shipping a package containing a large quantity of marijuana from Tucson, Arizona, to Bridgeport. The defendant was present, and arrested, within a house to which the package had been recently delivered; the Supreme Court affirmed that he was in constructive possession of the contraband at the time of his arrest even though both the defendant and another individual "were equidistant from the bathroom where the package was discovered" by law enforcement. Id., 142. The defendant in *Martin* was then also "in possession of a wallet, a cellular telephone, an $800 check and $1291 in cash . . . comprised of a few fifty dollar bills, but mostly twenty, ten and five dollar bills . . . [although he] did not have any weapons, drugs, or drug paraphernalia on his person." Id., 142–43.

As in the present case, albeit involving a different quantum of proof, the principal issue in *Martin* was "whether the state [had] introduced sufficient circumstantial evidence to support a permissive inference by

the jury that the defendant had knowledge that a package contained illegal narcotics, considering the defendant's actions before, during and after a controlled delivery of the package." Id., 136–37. In holding that the evidence was adequate to support the jury's determination that the defendant was in constructive possession of the contraband at issue, the court utilized the following measure: "[T]o prove illegal possession of a narcotic substance, it is necessary to establish that the defendant knew the character of the substance, knew of its presence and exercised dominion and control over it. . . . Where . . . the [narcotics were] not found on the defendant's person, the state must proceed on the theory of constructive possession, that is, possession without direct physical contact. . . . One factor that may be considered in determining whether a defendant is in constructive possession of narcotics is whether he is in possession of the premises where the narcotics are found. . . . *Where the defendant is not in exclusive possession of the premises where the narcotics are found it may not be inferred that [the defendant] knew of the presence of the narcotics and had control of them, unless there are other incriminating statements or circumstances tending to buttress such an inference. . . . While mere presence is not enough to support an inference of dominion or control where there are other pieces of evidence tying the defendant to dominion and control, the [finder of fact is] entitled to consider the fact of [the defendant's] presence and to draw inferences from that presence and the other circumstances linking [the defendant] to the crime. . . . State* v. *Smith,* 94 Conn. App. 188, 194, 891 A.2d 974, cert. denied, 278 Conn. 906, 897 A.2d 100 (2006)." (Citation omitted; emphasis added.) *State* v. *Martin,* supra, 285 Conn. 149–50.

Applying this standard, the Supreme Court identified incriminating statements by the *Martin* defendant himself, which, along with his possession of cash, his

involvement in the procurement of vehicles in which the package was transported and other circumstances, taken as a whole, supported the inference that he was not an innocent bystander with regard to the contraband but that he was in constructive possession of the marijuana contained in the package.[5] Id., 157. "This inference [was] further buttressed by the fact that the defendant . . . *actively participated* in the overall acceptance and delivery of the package" and was altogether sufficient to support verdicts of guilty on all charges. (Emphasis in original.) Id.

A like standard for measuring constructive possession, but with an opposite result, was applied in *State v. Fermaint*, 91 Conn. App. 650, 881 A.2d 539, cert. denied, 276 Conn. 922, 888 A.2d 90 (2005). This matter,

[5] The court identified a litany of complex factors that demonstrated the *Martin* defendant's involvement in the conspiracy and possession of the crate at issue. Those factors included, among other things, the defendant's active contribution to the planned possession of a large quantity of marijuana that "exceeded the amount for personal use and could be sold for a substantial profit . . . by scouting the parking lot of the Yellow Freight location [to which the contraband had been shipped], by providing a cellular telephone to help with communication, and by participating in safely transporting the marijuana from Middletown to Bridgeport." *State v. Martin*, supra, 285 Conn. 151–52. Moreover, the state had provided testimony competent to establish that the defendant's maneuvers were "integrally related to the transportation of larger quantities of drugs. Additionally, the defendant lied to the arresting officer about his employment as a graphic designer. He had sufficient cash on his person at the time of arrest to purchase approximately one pound of marijuana, which could in turn be sold for a significant profit. His explanations for his unverified employment history, the source of income that permitted him to possess two expensive automobiles were weak, at best. Moreover, his attempt to explain the suspicious activities regarding his fraudulent car registration, multiple driver's licenses and the manner in which he rented the maroon vehicle [used in the scouting] were unconvincing. Furthermore, the defendant's assertion that the crate contained a transmission was unavailing in light of the evidence that there were no tools or equipment for installing the transmission and that the box was stored in a bathtub with the shower curtain drawn. Finally, the credibility of the defendant was subject to severe scrutiny on the basis not only of his prior felony conviction, but on the basis of the fact that he faced likely deportation." (Internal quotation marks omitted.) Id., 153–55.

which also involved a violation of probation, is more factually similar to the facts of the present case than is the multifaceted scenario that forms the basis for the holding in *Martin*. In *Fermaint*, the defendant occupied the backseat of a vehicle in which several crumbs of a rock like substance, testing positive for cocaine, were found. Id., 652. When the police approached the vehicle, they had observed furtive movements between the defendant and the front seat passenger, and further observed the front seat passenger putting crack cocaine into her pants. A search of the defendant revealed no drugs and only $2 on his person, while the crack cocaine and a quantity of cash was located on the passenger's person. Id., 653. The Appellate Court found that these circumstances, taken as a whole, were insufficient to support a finding that the defendant had violated his probation by constructively possessing the contraband. Id., 651. The court reasoned that the defendant was not in exclusive possession of the vehicle in which the narcotics were found, and commented, notwithstanding his furtive conduct, that "[t]he record [was] devoid of any incriminating statements made by the defendant . . . [i]n order to infer that [the defendant] knew of the presence of the narcotics and had control of them, therefore, there must be circumstances tending to buttress such an inference" before constructive possession could be established. Id., 656, citing *State* v. *Davis*, 84 Conn. App. 505, 510, 854 A.2d 67 (probation properly revoked when drugs found within defendant's apartment), cert. denied, 271 Conn. 922, 859 A.2d 581 (2004). Because no such buttressing circumstances could be found, the *Fermaint* defendant could not be found to have been in constructive possession. *State* v. *Fermaint*, supra, 663.

The reasoning utilized in *Fermaint* informs the court's decision in the present matter, in which the defendant made no incriminating statements and did

not attempt to flee from the police, and in which neither contraband nor cash was found on his person, even though the marijuana was found in a shared space. The facts of *Fermaint* permitted the inference that the defendant had engaged in furtive conduct as part of an attempt to secrete contraband inside the passenger's pants, suggesting that prior to its discovery, the crack cocaine was within the defendant's shared or even exclusive possession within the vehicle. No constructive possession and no violation of probation was found, notwithstanding the evidence reflecting the presence of crumbs of crack cocaine in the immediate vicinity of the defendant's seat within the vehicle. Id., 657. No violation was found notwithstanding the defendant's furtive movements involving the front seat passenger on whose person the crack cocaine was found, including "a bending movement from the backseat, where he was seated, toward . . . the front passenger . . . ." Id., 652.[6] The Appellate Court found that this circumstantial evidence stood "in stark contrast to cases in which this court has affirmed judgments finding a probation violation on the basis of possession. . . . Here, the narcotics were not on the defendant's person, they were not found in a place under his exclusive or shared control, the police did not observe or videotape him engaging in any transaction, there were no controlled purchases from him, the police did not observe him pass anything to the other occupants in the car, he did not flee, he did not attempt to conceal the crumbs of crack cocaine and he did not make any incriminating statements. The only evidence offered to prove that the defendant was in possession of the crumbs of crack cocaine was his proximity to the crumbs and that he

---

[6] In denying certification to appeal, the Supreme Court declined to adopt Judge Bishop's reasoning, presented through his vigorous dissent, promoting his determination that the circumstances of *Fermaint* warranted "the conclusion that the defendant possessed narcotics . . . ." *State* v. *Fermaint*, supra, 91 Conn. App. 663 (*Bishop, J.*, dissenting).

engaged in 'furtive' movements. Under the preponderance of the evidence standard, that evidence is insufficient to prove possession of narcotics. Reviewing the record before us, we conclude that the court could not, by a preponderance of the evidence, find that the defendant possessed either the crumbs of crack cocaine on the seat next to him or the larger piece of cocaine recovered from the [front seat passenger]." Id., 662–63.

Instead of relying on the clearly enunciated principles of constructive possession as set forth and applied in *Martin* and *Fermaint*, the state would have the court utilize the summary measure of circumstantial evidence promoted through *Maryland* v. *Pringle*, 540 U.S. 366, 124 S. Ct. 795, 157 L. Ed. 2d 769 (2003). In *Pringle*, the defendant was a front seat passenger in a motor vehicle that had been stopped for speeding. Id., 368. The police officer's search led to seizure of "$763 from the glove compartment and five plastic glassine baggies containing cocaine from behind the back-seat armrest. When the officer began the search the armrest was in the upright position flat against the rear seat. The officer pulled down the armrest and found the drugs, which had been placed between the armrest and the back seat of the car." Id. At the scene, the defendant, like the other occupants of the vehicle, "offered no information regarding the ownership of the drugs or money." Id., 368–69. Subsequently, however, the defendant confessed to possession of the cocaine and "maintained that the other occupants of the car did not know about the drugs . . . ." Id., 369. Convicted of possession of cocaine and possession with intent to sell the same, the *Pringle* defendant successfully appealed to the Court of Appeals of Maryland, which found that "absent specific facts tending to show [a defendant's] knowledge and dominion or control over the drugs, the mere finding of cocaine in the back armrest when [the defendant] was a front seat passenger in a car being driven by its

owner is insufficient to establish probable cause for an arrest for possession." (Internal quotation marks omitted.) Id. The United States Supreme Court reversed the Maryland court's decision and remanded the case for further proceedings, consistent with its contrary conclusion that the defendant "and his two companions were in a relatively small automobile [and] [t]he quantity of drugs *and cash* in the car indicated the likelihood of drug dealing, an enterprise to which a dealer would be unlikely to admit . . . ." (Citations omitted; emphasis added.) Id., 373. Under these circumstances, the court found "an entirely reasonable inference . . . that any or all three of the occupants had knowledge of, and exercised dominion and control over, the cocaine." Id., 372.

The court finds *Pringle* to be inapposite to the issue of constructive possession raised in the context of the present violation of conditional discharge and violation of probation proceedings. *Pringle* cannot properly stand for the broad proposition that the state can establish constructive possession of contraband, by the preponderance standard with which the state is burdened in the present cases, through the quantum of evidence on which the United States Supreme Court's decision is based. *Pringle* concerned the threshold issue of probable cause for a finding of possession sufficient to establish the basis of seizure and subsequent arrest, and did not address the elements of constructive possession required to establish a violation of probation or a conviction for criminal conduct. The procedural context of *Pringle* is significant: that opinion resolved a claim that the Maryland trial court had applied an erroneous standard in determining whether there was probable cause to conduct a search of the motor vehicle that was stopped for speeding, and whether there was probable cause to seize contraband found in the vehicle and arrest the defendant for possession of that contraband

after the traffic stop had been made. Thus, in *Pringle*, the Supreme Court addressed "[t]he sole question [of] whether the officer *had probable cause* to believe that [the defendant] committed [the] crime." (Emphasis added.) Id., 370.

Although it relies on *Pringle*, the state does not dispute that the "probable cause" standard employed in that case is lower than that required for proof by a preponderance of the evidence. It is axiomatic that "[p]roof of probable cause requires *less than proof by a preponderance of the evidence*."[7] (Emphasis added; internal quotation marks omitted.) *State* v. *Johnson*, 286 Conn. 427, 435, 944 A.2d 297 (2008). Probable cause exists if a law enforcement officer "possessed a reasonable and articulable suspicion at the time the seizure occurred. . . . *State* v. *Santos*, 267 Conn. 495, 503, 838 A.2d 981 (2004)."[8] *State* v. *Clark*, 107 Conn. App. 819, 824–25, 947 A.2d 351 (2008). Given this distinction, even if the factual circumstances and dedicated principles

[7] Our Supreme Court "consistently [has] held that [t]he quantum of evidence necessary to establish probable cause exceeds mere suspicion, but is substantially less than that required for conviction. . . . The existence of probable cause does not turn on whether the defendant could have been convicted on the same available evidence. . . . [P]roof of probable cause requires less than proof by a preponderance of the evidence. . . . Probable cause, broadly defined, comprises such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . The probable cause determination is, simply, an analysis of probabilities. . . . Reasonable minds may disagree as to whether a particular [set of facts] establishes probable cause. . . . *State* v. *Clark*, [255 Conn. 268, 292–93, 764 A.2d 1251 (2001)]." (Internal quotation marks omitted.) *State* v. *Johnson*, 286 Conn. 427, 435, 944 A.2d 297 (2008); see also *Maryland* v. *Pringle*, supra, 540 U.S. 371–72.

[8] "'Reasonable and articulable suspicion is an objective standard that focuses not on the actual state of mind of the police officer, but on whether a reasonable person, having the information available to and known by the police, would have had that level of suspicion.' *State* v. *Wilkins*, 240 Conn. 489, 496, 692 A.2d 1233 (1997)." *State* v. *Clark*, supra, 107 Conn. App. 826–27; see also *Maryland* v. *Pringle*, supra, 540 U.S. 371, 373.

of *Pringle* were applicable to search and seizure issues in Connecticut, they do not establish a blanket standard for the determination of whether a defendant probably, on the basis of a preponderance of the evidence, engaged in criminal conduct in our state.[9] Instead, as we were reminded in *Pringle*, "[f]inely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the [probable-cause] decision." (Internal quotation marks omitted.) *Maryland* v. *Pringle*, supra, 540 U.S. 371.

## IV

## RESOLUTION OF THE STATE'S CLAIMS

The state urges the court to identify several aspects of the circumstantial evidence in the present case to support its claim that on their face or pursuant to *Pringle*, the facts are sufficient to support a finding that Pender was in constructive possession of the marijuana at issue. Those circumstances include: Pender's presence in the Hyundai with Williams and Siciliano for more than a few minutes in the early morning hours of January 31, 2007; his past experience with smoking marijuana and likely knowledge that marijuana was in the vehicle merely from the significant odor noted by Curran; the uncontroverted evidence that a marijuana blunt was being smoked by Williams and Siciliano at some time while Pender was within the Hyundai; and the further uncontroverted evidence establishing that when smoked in a motor vehicle, marijuana is commonly shared among the occupants.

---

[9] In Connecticut, facts and issues similar to those in *Pringle* would be subject to a more strict analysis of search and seizure principles under the Connecticut constitution, which "our Supreme Court has interpreted . . . as affording broader protection than its federal counterpart when determining whether an individual has been seized . . . ." See *State* v. *Oquendo*, 223 Conn. 635, 652–53, 613 A.2d 1300 (1992)." *State* v. *Clark*, supra, 107 Conn. App. 825.

The court finds these facts to be insufficient to establish the constructive possession of marijuana that is a predicate to a finding that Pender has violated his conditional discharge or his probation. Pender was not in exclusive possession of the Hyundai in which the contraband at issue was found, and Williams has credibly admitted to possessing at least some of the marijuana found in that vehicle and has been penalized therefor. This constellation of circumstances supports the conclusion that the contraband was in the possession of Williams, not Pender, for purposes of the violation of conditional discharge and violation of probation proceedings. These circumstances are reasonably consistent with the factual pattern of *Fermaint*, rendering the reasoning and result of that case applicable, especially as Pender did not even engage in furtive conduct, as did Williams and Siciliano. Moreover, other than Pender's presence in the vehicle while others were smoking marijuana, the evidence as a whole is markedly void of incriminating statements or buttressing circumstances adequate to linking, by the requisite preponderance standard, the defendant to the dominion and control of any of the marijuana found by Curran. See *State* v. *Martin*, supra, 285 Conn. 149–50. Pender's mere presence in the vehicle while Williams and Siciliano shared a blunt, even given his experience in smoking marijuana himself, does not permit the inference that the present defendant had control over or even that he knew of the presence of the additional marijuana located within the vehicle. See id.; *State* v. *Cruz*, 28 Conn. App. 575, 580, 611 A.2d 457 (1992) (where state failed to produce evidence defendant smoked marijuana or transported substance in vehicle in question, his statements involving nonspecific past marijuana were only "minimally probative of the issue of dominion and control").

In reaching this determination, the court credits Curran's testimony establishing that when smoked in a

motor vehicle, marijuana is commonly shared among the occupants. That evidence is consistent with Williams' testimony that he was sharing the blunt at issue with Siciliano inside the Hyundai on the night in question, but is insufficient to support an inference, on the basis of more than mere speculation, that Pender joined in smoking the marijuana. Although, as in *Pringle*, the contraband was found within the occupancy space of a vehicle of relatively small size, there has been no evidence whatsoever that could establish an intent on the part of Pender to speed away in a motor vehicle in an effort to avoid confrontation with law enforcement, as in *Pringle*, or to otherwise depart from the locations in which an imminent police search was likely to locate illegal drugs, although either circumstance would be competent to support a conclusion of constructive possession. Cf. *State* v. *Fagan*, 92 Conn. App. 44, 49–50, 883 A.2d 8, cert. denied, 276 Conn. 924, 888 A.2d 91 (2005).

Moreover, unlike the defendant in *Fermaint*, and unlike Williams and Siciliano, Pender did not engage in any furtive conduct that could otherwise be used to bolster the inference the state seeks to have drawn under the circumstances of the pending cases. Although somewhat summarily, *Pringle* thus views the nexus between drugs and cash in a motor vehicle as the type of evidence that can reliably be used to establish a level of dominion and control over contraband. *Maryland* v. *Pringle*, supra, 540 U.S. 371–72; see also *State* v. *Martin*, supra, 285 Conn. 149–50; *State* v. *Garcia*, 108 Conn. App. 533, 539, 949 A.2d 499 (2008). As no cash was reported to have been found within the Hyundai or on the person of any of its occupants, this factor cannot be utilized to establish Pender's connection with the marijuana at issue, either as a seller or as a buyer. Although the conditions of probation prohibited the defendant from violating any criminal law, the state does not argue that Pender's presence in the Hyundai,

even while others were smoking marijuana, was, independent of other factors, a violation of the criminal law. In the absence of reliable and probative evidence establishing such other circumstances as are contemplated by *Martin*, there is insufficient evidence to permit the court to infer that Pender was in constructive possession of the marijuana that the police located within the Hyundai in which he was a backseat passenger.

## V

## CONCLUSION

In the absence of incriminating statements by any person, as Pender was not in exclusive possession of the Hyundai in which the contraband was found, the state has failed to meet its burden of establishing other circumstantial evidence that is sufficient to support an inference that the defendant both knew of the presence of the marijuana within the vehicle and that he had control over that contraband. See *State* v. *Martin*, supra, 285 Conn. 149–50. Accordingly, the state has failed to meet its burden of establishing his actual constructive possession of the drugs at issue. See id.