## STATE OF CONNECTICUT *v.* TODD M. AGLI
## (AC 30433)

Gruendel, Alvord and Pellegrino, Js.

Argued April 7—officially released July 20, 2010

*Jennifer Rae Taylor*, law student intern, with whom was *Glenn W. Falk*, special public defender, for the appellant (defendant).

*Michele C. Lukban*, senior assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Maxine V. Wilensky*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PELLEGRINO, J. The defendant, Todd M. Agli, appeals from the judgment of the trial court revoking his probation and committing him to the custody of the commissioner of correction for seventy-five months. On appeal, the defendant claims that the court abused its discretion in revoking his probation and ordering him to serve the unexecuted portion of his sentence. We affirm the judgment of the trial court.

The court found the following facts. In 1997, the defendant entered *Alford*[1] pleas to sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1) and unlawful restraint in the first degree in violation of General Statutes § 53a-95 (a). The court sentenced the defendant to a total effective term of fifteen years of incarceration, execution suspended after seven years, and five years of probation. Among the conditions of probation was the standard condition that the defendant not violate any criminal law of Connecticut or the United States, as well as special conditions, which included that he have no contact with the victim or David M., avoid the use of drugs or alcohol, submit to random urinalysis, and participate in substance abuse and psychiatric evaluation and treatment as necessary.

In 2003, after his release from incarceration, the defendant was arrested and charged with threatening

[1] See *North Carolina* v. *Alford*, 400 U.S. 25, 35, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

in the second degree in violation of General Statutes § 53a-62, which resulted in a determination that he was in violation of his probation pursuant to General Statutes § 53a-32.[2] On July 8, 2004, the court revoked the defendant's probationary status and sentenced him to eight years incarceration, execution suspended after nine months, and forty-two months of probation. The court imposed the same special conditions of probation.

In April, 2005, shortly after his release, the defendant was arrested for stalking. He eventually entered *Alford* pleas to breach of the peace in the second degree in violation of General Statutes § 53a-181 and a second violation of probation. That second probation proceeding was based on the defendant's failure (1) to submit to medical or psychological evaluation, (2) to comply with substance abuse evaluation and treatment and (3) to comply with the special sex offender condition of probation, which is that he participate in sex offender evaluation and treatment. The court imposed a sentence of eighty-seven months of incarceration, execution suspended, and three years of probation. The original special conditions of probation were imposed, as well as several new requirements, most notably that the defendant enter Cedarcrest Hospital in Newington, remain as an inpatient and obey all rules and regulations.

Several months later, in June, 2006, the defendant was charged for the third time with violation of probation for disobeying the rules at Cedarcrest Hospital and refusing to take his medication. On February 7, 2007, the defendant entered an *Alford* plea, and the court imposed a sentence of seventy-five months of incarceration, execution suspended, with thirty-two months of probation.

---

[2] General Statutes § 53a-32 (a) provides in relevant part: "At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . ."

The court reimposed the original conditions of probation and ordered that the defendant reside at the Salvation Army Shelter (shelter) in New Britain until the office of adult probation approved alternative housing. He also was required to keep his probation officer, Christopher Pribyson, informed of his whereabouts at all times and was prohibited from sleeping overnight elsewhere from the shelter without permission from Pribyson.

On July 19, 2007, Pribyson learned that on July 14 and 17, 2007, the defendant had engaged in physically abusive behavior at his girlfriend's residence. Meriden police confirmed that 911 calls were made on both dates, and, when confronted about the incidents, the defendant admitted that he had been at his girlfriend's apartment but denied having slept away from his residence without permission. On July 27, 2007, the defendant was arrested in Meriden for trespassing.

On August 3, 2007, Pribyson learned from another probation officer that the defendant had been seen at a bus stop in front of his girlfriend's apartment that morning. Upon questioning, the defendant gave several conflicting versions of his whereabouts the previous evening, eventually admitting that he had missed the check-in time at the shelter and slept in a field along Chamberlain Highway. After further questioning by Pribyson, the defendant clarified that he had slept in a vacant lot across the street from the YMCA in Meriden. He also admitted that he had slept away from the shelter "a couple of times." Pribyson later learned that he had failed to sleep at the shelter sixteen times without permission between May and August, 2007. Subsequently, Pribyson commenced a fourth violation of probation proceeding against the defendant.

On September 8, 2008, the court conducted a violation of probation hearing. The court heard evidence from

the defendant, Pribyson and the director of the shelter, Major Stanley Newton. The court found by a preponderance of the evidence that the defendant had committed the criminal acts underlying his arrests and that he had violated the special conditions of probation pertaining to his residency requirement. In the dispositional phase of the probation hearing, the court determined that the beneficial purposes of probation would not be served by offering the defendant further probationary services due to his multiple failures to comply with the conditions of his probation. The court revoked the defendant's probation and sentenced him to a total effective term of seventy-five months incarceration. The defendant subsequently appealed to this court. In this appeal, the defendant challenges the court's findings at the dispositional phase of the probation revocation hearing. Additional facts and procedural history will be provided as necessary.

As a preliminary matter, we set forth the legal principles and the standard of review relevant to our discussion. "[A] probation revocation hearing has two distinct components. . . . The trial court must first conduct an adversarial evidentiary hearing to determine whether the defendant has in fact violated a condition of probation. . . . If the trial court determines that the evidence has established a violation of a condition of probation, then it proceeds to the second component of probation revocation, the determination of whether the defendant's probationary status should be revoked." (Internal quotation marks omitted.) *State* v. *Fowler*, 102 Conn. App. 154, 165, 926 A.2d 672, cert. denied, 284 Conn. 922, 933 A.2d 725 (2007). "Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing." (Internal quotation marks omitted.) *State* v. *Faraday*, 268 Conn. 174, 185, 842 A.2d 567 (2004).

"The standard of review of the trial court's decision at the [dispositional] phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . In the dispositional phase, [t]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Citations omitted; internal quotation marks omitted.) *State* v. *Preston*, 286 Conn. 367, 377, 944 A.2d 276 (2008).

The defendant claims that, because his violations were unintentional and minor and the court failed to exhaust "reasonable, less restrictive alternatives" to revocation, the court abused its discretion by imposing a sentence of seventy-five months incarceration. We disagree.

The defendant was found to have violated his probation on three separate occasions prior to the incident in question. At trial on the fourth violation, he admitted that he failed to return to the shelter in time for curfew "a couple times," and additional evidence was presented to show that he failed to return before curfew fifteen times between May and August, 2007. During the dispositional phase, the defendant presented evidence of his diminished cognitive capacity after two motorcycle accidents in 1992. Nonetheless, based on the entire record, the court found that even though the defendant had diminished cognitive ability, he was

"well versed in what's expected of him while on probation" and was capable of recognizing the consequences of his continued failure to return to the shelter on time. The court also noted that the defendant, on at least one occasion, possessed the capacity to attempt to mislead Pribyson about his whereabouts.

Despite the opportunity to take advantage of his probationary status to rehabilitate, the defendant continued to violate his probation. As a result of the underlying conviction, the defendant was a sex offender. That being the case, the special conditions requiring the defendant to reside at the shelter, as well as his previously mandated stay at Cedarcrest Hospital, were fundamental to the defendant's rehabilitation and the protection of society. Even if we are to credit the defendant's claim that he did not wilfully violate his probation, "protection of the public's safety may require that the probation be revoked." *State* v. *Hill*, 256 Conn. 412, 421, 773 A.2d 931 (2001). We do not agree with the defendant's assertion that his incarceration was unreasonable because his violation of the shelter's curfew did not implicate any rehabilitative purposes of his probation. The defendant was unmistakably aware that the special conditions relating to his residency were essential to his probation because of his status as a sex offender.

Therefore, on the basis of the defendant's violations, we conclude that the court reasonably determined that the defendant was no longer a good risk for probation. Accordingly, we are not persuaded that the court's decision to revoke the defendant's probation and order him to serve the unexecuted portion of his sentence reflected anything less than a sound exercise of its discretion.

The judgment is affirmed.

In this opinion the other judges concurred.